**COMMONWEALTH of Pennsylvania, PENNSYLVANIA GAMING CONTROL BOARD, Petitioner**

**v.**

**OFFICE OF OPEN RECORDS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 2011.
Decided June 11, 2012.

Denise L. Miller–Tsudhy, Assistant Chief Counsel, Harrisburg, for petitioner.

Dena Lefkowitz, Chief Counsel, Harrisburg, for respondent.

John J. Talaber, Assistant Counsel, Harrisburg, for amicus curiae Pennsylvania Board of Probation and Parole.

Michael D. Fabius, Philadelphia, for intervenor Valley Forge Convention Center Partners, LP.

BEFORE: LEADBETTER, President Judge [1], and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge and McCULLOUGH, Judge.

OPINION BY Judge LEAVITT.

The Pennsylvania Gaming Control Board (Gaming Board) petitions for review of a decision of the Office of Open Records (Open Records) ordering the Gaming Board to release certain documents requested by James D. Schneller (Schneller).

---

1. This case was assigned to the opinion writer before Judge Pellegrini succeeded Judge Leadbetter as President Judge.

2. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

---

Open Records held that Schneller's request was governed by the Right–to–Know Law [2] even though his request did not mention the Right–to–Know Law or use the Gaming Board's form adopted for record requests. We affirm in part and vacate in part.

The procedural history is as follows. On March 20, 2009, Schneller, a member of "Eastern Pennsylvania Citizens Against Gambling," sent an e-mail to Catherine Stetler in the Gaming Board's Communications Office.[3] Schneller requested copies of "communications" between the Gaming Board and several applicants for gaming licenses and copies of the financial data that each applicant provided to the Gaming Board. Schneller also asked to be allowed to speak at the Gaming Board's next public hearing. In its entirety, Schneller's e-mail stated:

Att: Mrs. Stetler
Pennsylvania Gaming Control Board
P.O. Box 69060
Harrisburg, PA 17106–9060

Re: Application of Valley Forge Convention Center Partners, LLP, Application of Bushkill Group, Inc., Petition of HSP Gaming, LP, Petitions of Sands Bethworks Gaming LLC, and Philadelphia Entertainment and Development Partners, L.P.

Dear Mrs. Stetler:

I am writing to repeat my verbal and written requests of February 2009 for copies of the communications sent to the Category 3 license applicants pertaining to the directive of the Board issued on January 21, 2009, that new financial data

---

3. The Gaming Board refers to Stetler as a "Press Aide." Gaming Board's Brief at 6. In her e-mail to Schneller, Stetler describes herself as working for the Gaming Board's Offices of Communications and Legislative Affairs. Reproduced Record at 6a.

be submitted, and their responses thereto, including the financial data.

I am also writing to request to speak at the public hearing scheduled for March 25th, 2009, on the topic of public concerns regarding the pending applications for Category 3 licenses, in the event that those applications are scheduled for any discussion or proceeding on that date.

Thus I ask that 72 or 48 hours' notice be granted us of any inclusion of said topics on the agenda. Thank you for your assistance.

Sincerely,
James D. Schneller
Eastern Pennsylvania Citizens Against Gambling

cc: Cyrus R. Pitre, Douglas Harbach, Raymond Quaglia Esquire, William Downing III Esquire

Reproduced Record at 6a–7a (R.R. ——).

By return e-mail on March 24, 2009, Stetler informed Schneller that he would be allowed to speak at the Gaming Board's public hearing the following day. However, Stetler did not respond to Schneller's request for "communications" and "financial data," nor did she forward Schneller's request to the Gaming Board's Open Records Officer. When Schneller did not hear from the Gaming Board by March 30, 2009, he deemed his request for information to be denied and appealed to Open Records.[4]

In his appeal to Open Records, Schneller asserted that the Gaming Board had denied his request for public records improperly under the standards in the Right–to–Know Law.[5] The Gaming Board responded that Schneller did not present a proper Right–to–Know Law request.

Before Open Records, the Gaming Board argued that Schneller could not appeal the "denial" of his document request because he had not presented a valid Right–to–Know Law request in the first place. At the time of Schneller's request, the Gaming Board's "Right to Know Law Policy and Procedure" stated that "written requests" must:

1. Be addressed to the Board's Open Records Officer at:

Pennsylvania Gaming Control Board
ATTN: Open Records Office
303 Walnut Street Strawberry Square
Verizon Tower, 5th Floor
Harrisburg, PA 17101–1825
(717) 346–8350(fax)
*pgcbrtklrequests@state.pa.us*
*Requests received in other offices will be forwarded to the Open Records Officer; however, the request will not be considered received until the Open Records Officer has received the request.*

---

4. Section 901 of the Right–to–Know Law states, in relevant part, as follows:

If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied. 65 P.S. § 67.901.

5. However, Schneller also filed a renewal request with the Gaming Board that used the form adopted by the Gaming Board for Right–to–Know requests. The Gaming Board created this form specifically for Right–to–Know Law requests, and it is available on the Gaming Board's website at http://www. gamingcontrolboard.pa.gov/files/policies/ PGCB_Right_to_Know_Policy_Request_Form. pdf.

The Right–to–Know Law allows an agency to develop a form to use in addition to a statewide uniform form developed by Open Records. Section 505(a) of the Right–to–Know Law, 65 P.S. § 67.505(a). The Law, however, does not mandate the use of any particular form. Instead, it merely provides that "[a]gencies may fulfill verbal, written or anonymous verbal or written requests for access to records under this act." Section 702 of the Right–to–Know Law, 65 P.S. § 67.702.

2. *State that the request is being made pursuant to the [Right–to–Know Law];*

3. Be submitted in writing by mail, by facsimile, in person, or by e-mail;

4. *Be made on the form designated on the Board's website www.pgcb.state. pa.us or the form provided by the Office of Open Records;*

5. Be sufficiently specific to enable the Board to ascertain which records are being requested; and

6. Be from a person that is a legal resident of the United States.

R.R. 30a–31a (emphasis added).[6] Because Schneller's request did not state it was a Right–to–Know Law request and was not presented on the Gaming Board's form for such requests, the Gaming Board argued it had no duty to respond. Accordingly, Schneller had not received a deemed denial that could be appealed to Open Records.

Open Records held otherwise. It reasoned that "[the Gaming Board] cannot simply choose to ignore a citizen's written request for records because it does not conform with its policies and/or procedures." R.R. 5a. Open Records noted that there is no statutory requirement that a person must cite to the Right–to–Know Law in a request for access to public records. To the contrary, a request need only be in writing for a requester to invoke the remedies in the Right–to–Know Law, including an appeal to Open Records. Section 702 of the Right–to–Know Law, 65 P.S. § 67.702.[7] Further, Open Records noted that Section 703 mandates that "[e]mployees of an agency shall be directed to forward requests for records to the open-records officer." 65 P.S. § 67.703. Indeed, the Gaming Board's own policy promised that "[r]equests received in other offices will be forwarded to the Open Records Officer." R.R. 30a. In other words, it did not matter that Schneller's request was submitted to the Communications Office instead of to the Open Records Office; his request should have been forwarded to the Open Records officer under the Gaming Board's own policy. Open Records held that the Gaming Board's failure to respond to Schneller's request constituted a deemed denial. Further, because the Gaming Board did not offer any substantive defenses to Schneller's request for records, Open Records ordered the Gaming Board to release the requested records within 30 days. The Gaming Board then petitioned for this Court's review of Open Records' decision.[8]

---

6. The Gaming Board's current policy states:

   Note: Only requests that can be identified as a RTKL request either by designation "RTKL," "Open Records Officer," or other language that makes it clear that the request is being made under the RTKL will be forwarded to the Open Records Officer. If a request does not clearly identify itself as a RTKL request, the request will be treated as a general request and no privileges under the RTKL will attach.

   Pennsylvania Gaming Control Board Right to Know Law Policy and Procedure, *available at* http://www.gamingcontrolboard.pa.gov/files/policies/PGCB_Right_to_Know_Policy_2011–08-25.pdf. Notably, the policy in place at the time of Schneller's request did not include this provision.

7. Section 702 of the Right–to–Know Law provides, in relevant part, that:

   If the requester wishes to pursue the relief and remedies provided for in this act, the request for access to records must be a written request.

   65 P.S. § 67.702.

8. We have held that Open Records acts, in cases like this one, as a disinterested quasi-judicial tribunal. *Pennsylvania State Education Association v. Department of Community and Economic Development,* 4 A.3d 1156, 1164 (Pa.Cmwlth.2010). This holding means two things. First, as a quasi-judicial tribunal, Open Records should not be the named respondent. *See Department of Public Welfare v. Shapiro,* 80 Pa.Cmwlth. 182, 471 A.2d 160,

■ On appeal, the Gaming Board presents two issues for our consideration.[9] First, the Gaming Board argues that Open Records erred in concluding that Schneller made a valid Right–to–Know Law request. Second, even assuming Schneller did make a valid Right–to–Know Law request, the Gaming Board argues that Open Records erred in ordering the disclosure of the records sought by Schneller because they are exempt from disclosure.[10]

■ We begin with the Gaming Board's contention that it may ignore a written request that does not conform to its policy, which is available on its website. Schneller's written request failed to conform to the Gaming Board's policy in two ways: (1) it did not cite to the Right–to–Know Law and (2) it was not submitted on either the Gaming Board's request form or Open Records' uniform request form. Accord-

ingly, the Gaming Board believes it had no obligation to respond. The Gaming Board further argues that if it has to treat "informal" requests for information as Right–to–Know Law requests, then it, and every agency, will be crippled by a "flood of requests."

Sweeping amendments to the Right–to–Know Law went into effect on January 1, 2009, designed to "promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Bowling,* 990 A.2d at 824. To that end, the legislature has established a rebuttable presumption that documents in the possession of a Commonwealth agency are public records. Section 305(a) of the Right–to–Know Law, 65 P.S. § 67.305(a).[11] The burden of prov-

---

161 (1984); PA. R.A.P. 1513(a) ("If the government unit is disinterested, all real parties in interest, and not the government unit, shall be named as respondents."). Second, as a disinterested party, Open Records does not have standing to argue matters which it originally adjudicated. *Philadelphia Board of Pensions and Retirement v. Pearlman,* 137 Pa. Cmwlth. 146, 586 A.2d 466, 468 (1991). Schneller, the real party in interest, has intervened in this matter. In any case, this appeal was brought prior to our decision in *East Stroudsburg University Foundation v. Office of Open Records,* 995 A.2d 496, 507 (Pa.Cmwlth. 2010), wherein we held that Open Records "does not have standing to defend its decision because it is not aggrieved by the release of another agency's records."

9. This Court's scope of review in appeals from the Office of Open Records is *de novo. See Bowling v. Office of Open Records,* 990 A.2d 813, 819–20 (Pa.Cmwlth.2010), *petition for allowance of appeal granted,* 609 Pa. 265, 15 A.3d 427 (2011); Section 1301(a) of the Right–to–Know Law, 65 P.S. § 67.1301(a) ("The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole. The decision shall clearly and concisely explain the rationale for the decision."). Additionally, this

Court may substitute its own findings of fact for that of the agency. *Bowling,* 990 A.2d at 818.

10. Various parties have intervened or filed *amicus curiae* briefs in this case. Schneller, Bushkill Group, Inc., and Valley Forge Convention Center Partners, L.P. are listed as intervenors, and Downs Racing, L.P., Greenwood Gaming and Entertainment, Inc. and the Pennsylvania Board of Probation and Parole (Parole Board) have filed *amicus curiae* briefs. With the exception of the Parole Board, the *amici curiae* and intervenors provide argument as to two issues raised by the Gaming Board. The Parole Board addresses a separate claim, *i.e.,* that if this Court concludes that all written requests are potential Right–to–Know Law requests, it will cause incalculable damage to the Parole Board's operational efficiencies.

11. Section 305(a) of the Right–to–Know Law provides that:

A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:
(1) the record is exempt under section 708;

ing that a record is exempt from public access is on the Commonwealth agency. Section 708(a)(1) of the Right–to–Know Law, 65 P.S. § 67.708(a)(1).[12]

The Right–to–Know Law authorizes an agency to respond to requests for public records whether presented orally or in writing. Section 702 of the Right–to–Know Law, 65 P.S. § 67.702.[13] However, "[i]f the requester wishes to pursue the relief and remedies provided for in [the Right–to–Know Law], the request ... must be ... written." *Id.*

At issue is the meaning of Section 703 of the Right–to–Know Law, which establishes the requirements of a written request for access to records. It states as follows:

A written request for access to records may be submitted in person, by mail, by e-mail, by facsimile or, to the extent provided by agency rules, by any other electronic means. *A written request must be addressed to the open-records officer designated pursuant to section 502. Employees of an agency shall be directed to forward requests for records to the open-records officer.* A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested and shall include the name and address to which the agency should address its response. A written request need not include any explanation of the requester's reason for

requesting or intended use of the records unless otherwise required by law. 65 P.S. § 67.703 (emphasis added). The "written request" may be transmitted in any number of formats and need not refer to the Right–to–Know Law, as argued by the Gaming Board. The question is what is meant by the second and third sentences, *i.e.*, that the written request "must be addressed to the [designated] open-records officer" and that agency employees must "forward requests" to that officer.

The dissent contends that by "addressed," the legislature dictated the salutation portion of the otherwise acceptable written request. Stated otherwise, under the dissent's view, a written request for records that begins with "To Whom It May Concern," is facially invalid and may be ignored. The dissent reads the following sentence in Section 703, which requires agency employees to forward requests for records to the open-records officer, to mean that agency employees must correct mistakes of the agency's mailroom. The dissent posits that only requests that are properly addressed to the agency's open-records officer, which mistakenly land on the wrong desk, must be forwarded. This is a rather strained and limiting interpretation.

First, it is hard to believe that the legislature was concerned with the niceties of the written request salutation. This seems so in light of the legislature's flexible defi-

---

    (2)  the record is protected by a privilege; or<br>
    (3)  the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree.

65 P.S. § 67.305(a).

**12.** Section 708(a)(1) of the Right–to–Know Law provides that:

The burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the

Commonwealth agency or local agency receiving a request by a preponderance of the evidence.

65 P.S. § 67.708(a)(1).

**13.** It states:

Agencies may fulfill verbal, written or anonymous verbal or written requests for access to records under this act. If the requester wishes to pursue the relief and remedies provided for in this act, the request for access to records must be a written request.

nition of "written request" and the varied means of its authorized submission. The real purpose of "addressed to the open-records officer" is to ensure that the requester does not shop around the agency for an employee sympathetic to his request. Only the open-records officer can handle the request. Accordingly, even if the requester finds an employee sympathetic to his request, it will not matter because that employee must forward the request to the open-records officer.

Second, the dissent's read of the forwarding requirement essentially writes the sentence out of Section 703. There was no need for the legislature to involve itself in an agency's mail distribution system. There is no precedent for such a statutory provision, and it is not necessary. Under the mailbox rule, senders of writings to anyone, government or otherwise, are entitled to assume that the writing will be delivered to the designated addressee.

Logically, therefore, the requirement that a written request be "addressed" to the open-records officer does not mean that it contain a formal salutation: "Dear Open-Records Officer." Rather, it means simply that written requests must be "directed" to the open-records officer, a word synonymous with "addressed." See Webster's Third New International Dictionary 24 (2002). This is why the statute

contains the provision that employees are "directed" to forward requests to the open-records officer. If it were intended that all requests be formally addressed to the open-records officer, there would be no need to require that such requests be forwarded.

Further, the legislature included other provisions in the Right–to–Know Law that clarify its intention that technicalities should not stop a written request for records in its tracks. For example, Section 505(a) requires Open Records to "develop a uniform form which shall be accepted by all Commonwealth and local agencies in addition to any form used by the agency to file a request under this act." 65 P.S. § 67.505(a). Notwithstanding that authorization, the legislature also made it clear that a requester's failure to follow an agency's policy on the format of a request does not allow the agency to ignore the request. Rather, the Right–to–Know Law requires the agency to notify the requester of the shortcomings in the form of the request, so that the requester can submit an acceptable one.

Section 902(a)(5) requires the open-records officer to determine whether "the requester has *not* complied with the agency's policies regarding access to records." 65 P.S. § 67.902(a)(5) (emphasis added).[14] If

---

65 P.S. § 67.702.

**14.** In its entirety, Section 902(a) of the Right–to–Know Law provides:

Upon receipt of a written request for access, the open-records officer for an agency shall determine if one of the following applies:

(1) the request for access requires redaction of a record in accordance with section 706;

(2) the request for access requires the retrieval of a record stored in a remote location;

(3) a timely response to the request for access cannot be accomplished due to

bona fide and specified staffing limitations;

(4) a legal review is necessary to determine whether the record is a record subject to access under this act;

(5) *the requester has not complied with the agency's policies regarding access to records;*

(6) the requester refuses to pay applicable fees authorized by this act; or

(7) the extent or nature of the request precludes a response within the required time period.

65 P.S. § 67.902(a) (emphasis added). Additionally, the Law gives agencies authority to "promulgate regulations and policies neces-

he so finds, then the open-records officer "shall send notice to the requester within five business days" of that determination, *i.e.,* the lack of compliance. Section 902(b)(1) of the Right–to–Know Law, 65 P.S. § 67.902(b)(1). Schneller's request did not conform to the Gaming Board's policy on the format of a request for records. This did not give the Gaming Board the right to ignore the request, as it argues. The Gaming Board should have notified Schneller of its determination, and it did not.

The Right–to–Know Law does not require that a written request cite the Right–to–Know Law as a condition precedent to the request being processed by the agency. Rather, Section 703 requires that the request be presented with "sufficient specificity to enable the agency to ascertain which records are being requested and shall include the name and address to which the agency should address its response." 65 P.S. § 67.703. The focus is on the substance of the written request, not its form. *Id.*

We conclude that the General Assembly intended that state and local agencies should presume that written requests for records are Right–to–Know requests. First, the Right–to–Know Law repeatedly refers to "written requests for access to records," but it does not use the term "Right–to–Know Law requests." [15] Second, the Right–to–Know Law's *only* requirements dealing with the composition of a written request are that the request be sufficiently specific to allow the agency to identify the requested record and include the requester's name and address. Third, the Right–to–Know Law prevents technical deficiencies in a written request from nullifying the request. A written request for records sent to the wrong person in the agency must be forwarded to the open-records officer. If a written request does not comply with the agency's policy for such requests, the open-records officer in the agency must so notify the requester of this fact so that the requester can resubmit the request. [16]

Here, Schneller's written request for records was sent by e-mail and asked for

> *copies of the communications* sent to the Category 3 license applicants pertaining to the directive of the Board issued on January 21, 2009, that new financial data be submitted, and their *responses thereto, including the financial data.*

sary for the agency to implement this act." Section 504(a) of the Right–to–Know Law, 65 P.S. § 67.504(a).

**15.** *See, e.g.,* Section 702 of the Right–to–Know Law, 65 P.S. § 67.702 ("Agencies may fulfill verbal, written or anonymous verbal or written *requests for access to records* under this act. If the requester wishes to pursue the relief and remedies provided for in this act, the *request for access to records* must be a written request."); Section 703 of the Right–to–Know Law, 65 P.S. § 67.703 ("A written *request for access to records* may be submitted in person, by mail, by e-mail, by facsimile or, to the extent provided by agency rules, by any other electronic means."); Section 901 of the Right–to–Know Law, 65 P.S. § 67.901 ("Upon receipt of *a written request for access*

to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request."); Section 902(a) of the Right–to–Know Law, 65 P.S. § 67.902(a) ("Upon receipt of *a written request for access,* the open-records officer for an agency shall. . . .") (emphasis added).

**16.** The Right–to–Know Law has not made informal requests for records nullities. However, the remedies in the Right–to–Know Law are available only to those who submit written requests.

R.R. 7a (emphasis added). A "record" is broadly defined. It includes "information" created "in connection with a transaction, business or activity of the agency." Section 102 of the Right–to–Know Law, 65 P.S. § 67.102.[17]

The Gaming Board's "communications" to applicants were created by the agency in connection with its official activity, *i.e.*, licensing applicants. Schneller presented a request for a record, and it should have been treated as a Right–to–Know request. Because there was no action on his request within five days, Schneller deemed it denied, as he was entitled to do. *See* Section 901 of the Right–to–Know Law, 65 P.S. § 67.901. Accordingly, we hold that Open Records did not err in holding that the Gaming Board's refusal to respond to Schneller's request was a deemed denial, which triggered the Right–to–Know Law remedies.

The Parole Board has filed an *amicus curiae* brief to express its concerns about the implication of treating Schneller's request as a Right–to–Know Law request, noting that it receives 600 to 1000 written requests for information each month. The Parole Board claims that it will be impossible to treat each request as a Right–to–Know request. The Parole Board did not offer examples of the types of requests it receives; it merely argues that it cannot channel all written requests through its open-records officer. The burden it poses is, at best, a hypothetical one.

■ First, this Court may not disregard the plain language of a statute for the reason that it is burdensome. In *Koken v.*

*Reliance Insurance Company*, 586 Pa. 269, 290, 893 A.2d 70, 82 (2006), the appellant argued that a particular reading of a statute would "lead to a harsh or draconian result" which was "in conflict with the spirit of the statute." The Pennsylvania Supreme Court rejected this argument, explaining that "[w]here it is unambiguous, the plain language controls, and it cannot be ignored in pursuit of the statute's alleged contrary spirit or purpose." *Id.* We must not presume a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922(1) (stating "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.") Notably, the Parole Board's general allegations do not establish an absurd, impossible or unreasonable result. It has not shown that it cannot address this hypothetical burden by promulgating a policy.

Second, it does not follow from Open Records' adjudication, as the Parole Board contends, that agencies must direct all written requests to the open-records officer even where it is clear that there is another process established for handling specific requests, such as a copy of one's lost drivers' license or a copy of one's birth certificate. The Right–to–Know Law provides that

[i]f the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act shall not apply.

Section 3101.1 of the Right–to–Know Law, 65 P.S. § 67.3101.1. Therefore, a written request that involves a conflicting provi-

---

**17.** Section 102 defines "record" as follows:

Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. § 67.102.

sion in federal or state law will be handled in accordance with that other statute.

For example, Section 801 of the Vital Statistics Law of 1953 [18] provides that

[t]he *vital statistics records* of the department and of local registrars *shall not be open to public inspection* except as authorized by the provisions of this act and the regulations of the Advisory Health Board. Neither the department nor local registrars shall issue copies of or disclose any vital statistics record or part thereof created under the provisions of this or prior acts except in compliance with the provisions of this act and the regulations of the Advisory Health Board.

35 P.S. § 450.801 (emphasis added). The Pennsylvania Department of Health website explains that vital records, including birth and death certificates, are not public records, and cannot be released under the Right–to–Know Law.

In order to request a birth certificate a person must establish that he is over eighteen years of age and is the person named on the certificate; an immediate family member of the person named on the certificate; or has power of attorney for a person qualified to request the certificate.[19] In order to request a death certificate a person must establish that he is the legal representative of a decedent's estate; an immediate family member; an extended family member with a direct relationship to the decedent; or have power of attorney for a person qualified to request the certificate.[20]

The Right–to–Know Law does not set aside or alter the well-established procedures of the Department of Health for handling routine requests for documents in its custody. Our holding here affects only requests for records not governed by procedures established in other state and federal statutes.

If an agency receives a request that may, or may not, be subject to the Right–to–Know Law, the agency need only inform the putative requester to use the agency's Right–to–Know Law form. *See* 65 P.S. § 67.902. Ironically, the Gaming Board's non-response to Schneller's request created burdens for itself and for Open Records. It would have been much easier to inform Schneller, in accordance with Section 902(a)(5) and (b)(1), to resubmit his request on the proper form. Once he did so, the Gaming Board could have raised its substantive objections.[21]

In sum, we affirm Open Records' holding that Schneller had the right to deem

---

**18.** Act of June 29, 1953, P.L. 304, *as amended,* 35 P.S. §§ 450.101–450.1003.

**19.** *http://www.portal.state.pa.us/portal/server. pt/community/birth_certificates/14121.*

**20.** *http://www.portal.state.pa.us/portal/server. pt/community/death_certificates/14122.*

**21.** At oral argument, the Court considered whether a written request for records could be ignored under "a reasonably prudent person" standard. The hypothetical question posed was whether a state employee doing highway construction or a police officer, if handed a letter requesting information, should be expected to know that the letter was a Right–to–Know request and forward the letter to an open-records officer. The dissent suggests that the holding herein would render such letters valid Right–to–Know Law requests. We disagree. The reasonable person standard may provide a defense in another case, but it is not relevant in this case. Here, the written request for documents was addressed to a press aide in the Gaming Board's Offices of Communications and Legislative Affairs. The request was copied to the Gaming Board's Chief Enforcement Counsel and its Director of Media Relations. The written request was delivered or copied to persons who cannot reasonably claim that they never heard of the Right–to–Know Law or were ignorant of its requirements. Indeed, the Gaming Board makes no such claim here.

his request denied and to appeal that denial.[22]

■ We turn next to the Gaming Board's second issue, *i.e.*, that Open Records erred by ordering the Gaming Board to disclose records that are exempt. The Gaming Board and intervenors argue that the requested records are exempt for two reasons. First, the Gaming Board is prohibited from disclosing these records by the Pennsylvania Race Horse Development and Gaming Act (Gaming Act) and the Uniform Trade Secrets Act.[23] Second, the records are exempt because they were generated in an investigation of the Gaming Board. *See* Section 708(b)(17) of the Right–to–Know Law, 65 P.S. § 67.708(b)(17). Open Records responds that the Gaming Board had the opportunity to raise this issue before Open Records, but it did not. It is, accordingly, waived. Alternatively, Open Records requests a remand on the issue of whether some of the records requested are confidential and, thus, exempt from disclosure.

As noted, the presumption that all records in the possession of an agency are public records can be rebutted because certain government documents are exempt from disclosure by another state or federal law, such as the Vital Statistics Law.[24]

Likewise, there is an exemption for records compiled in a noncriminal investigation, including "information made confidential by law." Section 708(b)(17)(iv) of the Right–to–Know Law, 65 P.S. § 67.708(b)(17)(iv). The Gaming Board notes that Section 1206(f) of the Gaming Act provides, in relevant part, that:

> information submitted by an applicant . . . pursuant to section 1310(a) (relating to slot machine license application character requirements) . . . or obtained by the board or the bureau as part of *a background . . . investigation from any source shall be confidential.*

4 Pa.C.S. § 1206(f) (emphasis added).

Schneller requested financial data submitted by applicants and "communications" and "responses." These requests may, or may not, be exempt from disclosure. We will remand this matter for a review of the Gaming Board's arguments in that regard. Open Records has a point that the Gaming Board should have raised these substantive defenses. However, the license applicants have an interest that the Gaming Board apparently did not consider. The Gaming Board did not have the right or authority to waive applicants' interest in keeping their application information confi-

---

**22.** The dissent concludes that a written request must either be addressed to an open-records officer or include some reference to public information, lest an agency be overburdened in its evaluation of the requests. As noted, an agency in doubt about the nature of the request has only to inform the requester that Right–To–Know Law requests must be resubmitted using the agency's Right–To–Know Law request form. No further evaluation is required.

**23.** 4 Pa.C.S. §§ 1101–1904 and 12 Pa.C.S. §§ 5301–5308, respectively. Specifically, the Gaming Board argues that the records are exempt because of Section 1206(f) of the Gaming Act, 4 Pa.C.S. § 1206(f). However, the Gaming Board only mentions the Uniform

Trade Secrets Act in passing. Therefore, we will not evaluate the Gaming Board's claim under that Act.

**24.** Section 305(a) of the Right–to–Know Law states:

> A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:
> (1) the record is exempt under section 708;
> (2) the record is protected by a privilege; or
> (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree.

65 P.S. § 67.305(a).

dential. Further, the Gaming Board lacks authority to divulge information required to be kept confidential under Section 1206(f) of the Gaming Act.

For these reasons, we vacate and remand to the Office of Open Records with instructions to remand to the Gaming Board to review the records requested by Schneller and grant or deny access to those records in accordance with the Right–to–Know Law. In the event that Schneller has other requests for access to records pending before the Gaming Board, those requests may be consolidated with the present matter on remand.

### *ORDER*

AND NOW, this 11th day of June, 2012, the order of the Office of Open Records dated May 11, 2009, in the above-captioned matter is hereby VACATED insofar as it ordered the Pennsylvania Gaming Control Board to release the records requested by James D. Schneller. This matter is REMANDED for further proceedings regarding the disclosure of the requested records. The order of the Office of Open Records is AFFIRMED in all other respects.

Jurisdiction relinquished.

### DISSENTING OPINION BY Judge PELLEGRINI.

Glomming onto one sentence contained in Section 703 of the Right–to–Know Law (RTKL),[1] which states that "[e]mployees of an agency shall be directed to forward requests for records to the open records officer," the majority would hold that a request could be made to any employee of the agency and that the time begins to run to respond against the agency with the submission of the request to any employee. The majority also holds that despite the

statutory requirement that a form be prepared for use in open records request, any written request will do. Because I believe that the majority's interpretation is at variance with the plain language of the RTKL, I respectfully dissent.

### A.

The first issue is to whom RTKL requests must be made. Section 502(a)(1) of the RTKL, 65 P.S. § 67.502(a)(1), provides that "[a]n agency shall designate an official or employee to act as the open-records officer." Regarding the Open Records Officer's functions, Section 502(b) provides that:

(1) **The open-records officer shall receive requests submitted to the agency under this act,** direct requests to other appropriate persons within the agency or to appropriate persons in another agency, track the agency's progress in responding to requests and issue interim and final responses under this act.

(2) Upon receiving a request for a public record, legislative record or financial record, the open-records officer shall do all of the following:

(i) Note the date of receipt on the written request.

(ii) Compute the day on which the five-day period under section 901 will expire and make a notation of that date on the written request.

(iii) Maintain an electronic or paper copy of a written request, including all documents submitted with the request until the request has been fulfilled. If the request is denied, the written request shall be maintained for 30 days or, if an appeal is filed, until a final determination is issued under section 1101(b) or the appeal is deemed denied.

1. Act of February 14, 2008, P.L. 6, 65 P.S. § 67.703.

(iv) Create a file for the retention of the original request, a copy of the response, a record of written communications with the requester and a copy of other communications. This subparagraph shall only apply to Commonwealth agencies.

65 P.S. § 67.502(b). (Emphasis added.)

Not only does Section 502 designate that the open records officer is the only person designated to receive records requests, but Section 703 provides that the requestor has to address the written request to the open records officer. It provides:

A written request for access to records may be submitted in person, by mail, by e-mail, by facsimile or, to the extent provided by agency rules, by any other electronic means. **A written request must be addressed to the open-records officer designated pursuant to section 502.** *Employees of an agency shall be directed to forward requests for records to the open-records officer.* A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested and shall include the name and address to which the agency should address its response. A written request need not include any explanation of the requester's reason for requesting or intended use of the records unless otherwise required by law.

65 P.S. § 67.703. (Emphasis added.)

The provision says that the request must be "addressed" to the open records officer. As to the next sentence, while it does say that employees must forward a written request to the open records officer, that sentence does not mean any request has to be forwarded, but only a request that is "addressed" to the open records officer. To hold otherwise reads completely out of this provision the sentence that a written request "must" be made to the open records officer.

Taken together, these provisions mean that a request has to be "addressed" to the open records officer; only requests "addressed" to the open records officer are required to be forwarded; and time begins to run against the agency when the open records officer receives a properly addressed request. Because the request here was not addressed to the open records officer, for this reason alone, the Gaming Control Board was not required to respond to the request.

**B.**

The other reason that the agency was not required to respond to the written request made here is that it was not on the official form. The majority would hold that an agency cannot require that a requestor be mandated to use the "official form" to make a records request. Again, the majority's position is at odds with the RTKL. Section 505(a) of the RTKL, 65 P.S. § 67.505(a), provides that:

The Office of Open Records shall develop a uniform form which **shall be accepted** by all Commonwealth and local agencies in addition to any form used by the agency to file a request under this act. The uniform form shall be published in the Pennsylvania Bulletin and on the Office of Open Record's Internet website.

(Emphasis added.)

Under this provision, while an agency may accept other written requests, the only request that it is required to accept are those made on the forms promulgated by the agency or the Office of Open Records. To hold that a request does not have to made on a form would relegate this statutory mandate to develop a uniform form to agency "busy work." Again, because the request here was not on the

prescribed form, the Gaming Control Board was not required to answer the request.

Because the majority's holding would make an unaddressed request written on the back of a brown paper bag and given to a PennDot plow driver by the side of the road on a snowy winter night a valid right-to-know law request, I respectfully dissent.

Judges McGINLEY and COHN JUBELIRER join in this dissenting opinion.