# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAMING CONTROL BOARD, | No. 67 MAP 2013 |
| Appellant | Appeal from the Order of the Commonwealth Court dated June 11, 2012 at 1134 C.D. 2009, affirming in part and vacating in part the decision of the Office of Open Records dated May 11, 2009 at AP 2009-0281. |
| v. | |
| | 48 A.3d 503 (Pa. Cmwlth. 2012) |
| OFFICE OF OPEN RECORDS, | |
| Appellee | |
| EASTERN PENNSYLVANIA CITIZENS AGAINST GAMBLING AND JAMES D. SCHNELLER, | |
| Intervenor | |
| VALLEY FORGE CONVENTION CENTER PARTNERS, LP, | |
| Intervenor | ARGUED: May 7, 2014 |

## OPINION

**MR. CHIEF JUSTICE CASTILLE**          **DECIDED: November 10, 2014**

In this open-records matter, we are called upon to construe Section 703 of the Right-to-Know Law (RTKL), 65 P.S. § 67.703 ("Section 703"), setting forth the requirements for written RTKL requests for access to public records, to determine

proper application of the provision which directs that all such requests "must be addressed to the open-records officer." For reasons stated below, we hold that in order to establish a valid RTKL request sufficient to trigger appellate rights from a non-response under the RTKL, the requestor must address his request to the respective open-records officer as mandated in Section 703. Accordingly, we reverse.

I.

On March 20, 2009, intervenor James D. Schneller ("requestor"), of Eastern Pennsylvania Citizens Against Gambling, sent an email to Catherine Stetler, a press aide in the Office of Communications and Legislative Affairs of the Pennsylvania Gaming Control Board ("GCB"), requesting copies of communications between the GCB and several applicants for gaming licenses, as well as copies of the financial data that each applicant provided to the GCB. He also asked for permission to speak at the GCB's next public hearing, and copied his request to the GCB's Director of Media Relations and Chief Enforcement Counsel. It is undisputed that requestor did not make mention of any open-records officer in his written request. On March 24, 2009, the press aide responded to the written request by return email, wherein she apologized for having been out of the office and attached a public comment sign-up form with instructions to return the completed form for permission to comment at the GCB's public hearing on the following day. The aide did not otherwise respond to the request for records, and did not forward the request to the GCB's open-records officer.

On March 30, 2009, requestor deemed his records request denied pursuant to 65 P.S. § 67.901, which states: "If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied." Thereafter, requestor filed a timely appeal from the deemed denial with the Office of Open Records ("OOR"). In opposition, the GCB took the

position that there was no deemed denial from which an appeal could rightfully be taken under the RTKL because requestor had not submitted a valid RTKL request to its open-records officer, and therefore, the GCB had no duty to respond concerning the records requested. The OOR disagreed, concluding that the request was not defective under the RTKL, and that the GCB's failure to respond did, in fact, constitute a deemed denial. Further, because the GCB had not offered any substantive defense to the records request, the OOR ordered the GCB to release the records within thirty days.

On appeal, the Commonwealth Court, sitting *en banc* and dividing 4-3, affirmed the OOR's decision with respect to the validity of the records request, but vacated the OOR's order and remanded the matter for review of the records requested and a proper determination as to whether access to those records is properly granted or denied under the RTKL. Pennsylvania Gaming Control Bd. v. Office of Open Records, 48 A.3d 503 (Pa. Cmwlth. 2012) (hereinafter "PGCB"). The court majority focused its inquiry upon the second and third sentences of Section 703, which provide: "A written request must be addressed to the [designated] open-records officer . . . . Employees of an agency shall be directed to forward requests for records to the open-records officer." In so doing, the court held that the first of these two sentences "means simply that written requests must be 'directed' to the open-records officer . . . ." PGCB, 48 A.3d at 509. In reaching this conclusion, the court stated: "it is hard to believe that the legislature was concerned with the niceties of the written request salutation. . . . The real purpose of 'addressed to the open-records officer' is to ensure that the requestor does not shop around the agency for an employee sympathetic to his request." Id. at 508-09. In the court majority's view, the word "addressed" is synonymous with the word "directed," and "[t]his is why the statute contains the provision that employees are 'directed' to forward requests to the open-records officer." Id. at 509. Finally, the court stated, without

qualification, "We conclude that the General Assembly intended that state and local agencies should presume that written requests for records are Right–to–Know requests." Id. at 510.

In a dissenting opinion joined by Judges McGinley and Cohn Jubelirer, Judge (now President Judge) Pellegrini disagreed with the rationale of the Commonwealth Court majority. In the dissenting view, "Section 703 provides that the requestor has to address the written request to the open records officer[,]" and that only written requests so addressed must be forwarded to the open-records officer by agency employees. Id. at 515 (Pellegrini, J., dissenting, joined by McGinley and Cohn Jubelirer, JJ.). According to that dissent, the Commonwealth Court's Majority Opinion "would make an unaddressed request written on the back of a brown paper bag and given to a PennDot plow driver by the side of the road on a snowy winter night a valid right-to-know law request." Id. at 516.

We allowed the GCB's appeal to determine what constitutes a proper written request under the RTKL, sufficient to trigger the five-day deadline for the response and deemed denial provision of the statute, as this presents an issue of first impression which is of statewide public importance.[1]

_____

[1] The issues as framed by the PGCB are:

> Did the Commonwealth Court err when it held that any written request for records received by any government agency is to be considered a Right to-Know Law request even when the request does not meet the Law's bare minimum requirements for triggering the Law's application and appeal rights?

> [and]

> Whether the Commonwealth Court erred in its analysis under the rules of Statutory Construction by not applying the Right-to-Know Law's clear and plain language which

(…continued)

II.

The construction of Section 703 is a matter of statutory interpretation presenting a pure question of law. Thus, our standard of review is *de novo* and our scope of review is plenary. Cozzone ex rel. Cozzone v. W.C.A.B. (PA Municipal/East Goshen Twp.), 73 A.3d 526 (Pa. 2013). Section 703 provides in its entirety:

> A written request for access to records may be submitted in person, by mail, by e-mail, by facsimile or, to the extent provided by agency rules, by any other electronic means. **A written request must be addressed to the open-records officer designated pursuant to section 502. Employees of an agency shall be directed to forward requests for records to the open-records officer.** A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested and shall include the name and address to which the agency should address its response. A written request need not include any explanation of the requester's reason for requesting or intended use of the records unless otherwise required by law.

(Emphasis added).[2]

The GCB argues as follows. The Commonwealth Court erred by holding that requestor's email to a GCB press aide constituted a RTKL request triggering the procedures and remedies of the RTKL in spite of requestor's failure to conform to the RTKL by addressing the request to the GCB's right to know officer. In the RTKL, the

---

(continued…)
       resulted in an application of the law contrary to the intent of
       the General Assembly?

Appellant's Brief at 4. We will consider the two questions, which overlap, together.

[2] Section 502 of the RTKL, 65 P.S. § 67.502, as referenced in the text of Section 703, provides: "An agency shall designate an official or employee to act as the open-records officer. . . ."

General Assembly prescribed a clearly-delineated framework for receipt, review, and response to records requests. The RTKL provides that agencies may fulfill verbal, written, and anonymous requests, but if the requestor seeks to invoke the remedies afforded under the RTKL, the request must be in writing. It further provides that the written request must be addressed to the open-records officer, and that upon receipt, the agency shall determine whether the record at issue is subject to disclosure. The open-records officer has five days to respond on behalf of the agency, and if the agency fails to respond within that time-frame and fails to obtain an extension, the written request is deemed denied. A requestor denied records may then file an appeal with the OOR. This process provides a reasoned approach, while the Commonwealth Court majority's opinion imposes burdens on all agencies that are inconsistent with the RTKL.

The GCB further argues that the General Assembly intended the process to be mandatory when utilized, requiring that a request "must" be addressed to the open-records officer, meaning the requestor must thereby indicate his intent to invoke the RTKL process. This requirement is not concerned with courtesy and salutation, the GCB says, but with indicating an intent to invoke the RTKL's process in order to ensure timely processing without deemed denials, potential defaults, or detriment to third parties. Alternatively, however, the GCB asserts, agencies commonly respond to informal records requests, and citizens may desire to take advantage of this informal process rather than invoking the RTKL process, which delays the processing of requests. The Commonwealth Court's decision, therefore, erodes efficiency by demanding that every records request to every agency employee be deemed a RTKL invocation, requiring that it be forwarded to an open-records officer for review and formal response, and all within a five-day period. The GCB stresses that because not every records request is a RTKL request, agency employees must have some means to

readily determine whether a request triggers the RTKL to avoid repetition of the present controversy. In this case, the press aide did not ignore the records request, but simply had no reason to believe it was a RTKL request.

The OOR counters that the Commonwealth Court majority decision is consistent with plain language of RTKL, and to the extent that the RTKL is ambiguous, the RTKL must be liberally interpreted in conformity with its remedial purpose of ensuring easy access to government records and consistency with the Freedom of Information Act, 5 U.S.C. § 552. According to the OOR, all requests that are (1) written, (2) include the requestor's name and address, and (3) are specific, should presumptively be deemed RTKL requests. The OOR posits that, where an agency fails to notify a requestor of his failure to comply with agency policies regarding access to records and an appeal is taken to the OOR, the record holding agency may overcome that presumption by application of a reasonably prudent person standard. Here, the OOR says, the Commonwealth Court's critical findings of fact are that requestor complied with these three prerequisites for a presumptively valid RTKL request, and that he reasonably forwarded that presumptively valid RTKL request to persons familiar with the RTKL. Because the GCB does not argue that these findings of fact are not supported by substantial evidence, the OOR reasons that the Commonwealth Court's decision should be affirmed.

The OOR further emphasizes that the General Assembly's intent to provide access to public records cannot be ignored, even in the face of real or perceived procedural defects. The remedial purpose of the RTKL governs, and therefore, to the extent that the parts of Section 703 at issue are irreconcilable, under 1 Pa.C.S. § 1934, the last sentence must control such that RTKL requests can be properly sent to any agency employee. Thus, in the OOR's view, this Court should enforce the directive that

employees forward requests to the open-records officer over the provision that requests must be addressed to the open-records officer. Further, reading the operative provisions together, as opposed to reading them as being in conflict, the OOR argues:

> This provision also says that "A written request must be addressed to the open-records officer designated pursuant to section 502," but does not delineate who — the requester or another agency employee that receives a request — must "address[]" the request to an agency's open-records officer. . . . As agency employees must forward requests, Section 703 logically mandates that all requests be "addressed" ("directed") by agency employees to the open-records officer.

Appellee's Brief at 23.

According to the OOR, an important component of Section 504 of the RTKL, 65 P.S. § 67.504, is that agency regulations and policies must be posted. Here, requestor alleged that the GCB failed to post information regarding its procedures other than to state that requests may be submitted to its Office of Communications, and requestor complied. Moreover, the GCB failed to list the name of its open-records officer on its website. (Notably, the GCB generally disputes these factual averments.[3])

The OOR insists that there is no harm in presuming that all written requests for records to all agency employees are RTKL requests of the agency. There is no RTKL

---

[3] In its reply brief, the GCB contends that the regulations pertaining to its Office of Communications predate the present RTKL and make no reference to RTKL requests, but provide general information concerning the GCB and its meetings, including how one might participate in GCB meetings and how one might request information regarding the GCB. The GCB insists that in anticipation of the RTKL becoming effective on January 1, 2009, the GCB posted its RTKL policy to its website on December 31, 2008, including the address of its Open Records Office and the statement that RTKL requests must be addressed to "the Board's Open Records Officer" at the stated address. Appellant's Reply Brief at 8-9. Given our resolution premised upon the language of the statute *infra*, we need not address or resolve this factual dispute.

provision referencing the phrases "request for access" or "written request" that requires a request be submitted on a form, or that it cite the RTKL. Thus, the OOR posits, agencies must respond to all written requests, since all requests are presumptively valid, regardless of which employee receives the request. And finally, where a written request is defective for failure to comply with agency policies, under 65 P.S. § 67.902(b)(1), the agency must send the requestor notice of any such defects.

Requestor adopts the OOR's arguments, and adds that in his view, the GCB exaggerates the burdens on agencies caused by the decision below. He notes that requestors may take advantage of the web presence that agencies now have, and charges that any "mystery" regarding the RTKL process should not be tolerated. In his view, he has a right to the information at issue, his request was specific and clear, and so his request should be deemed valid, notwithstanding his failure to address his request to the open-records officer.

We acknowledge receipt of several *amicus* briefs, including a brief filed on behalf of the Pennsylvania General Assembly in support of the position taken by the GCB. According to the General Assembly, the Commonwealth Court's opinion is erroneous and will significantly disrupt services provided to the public. The General Assembly notes that most requests made to legislators are answered informally, rather than treated as RTKL requests, and maintains that, contrary to the Commonwealth Court decision, not every written request is or should be treated as a RTKL request. In the General Assembly's view, the statute differentiates between regular requests for information and RTKL requests, and only where the requestor specifies that the request is made under the RTKL does the request implicate the relief and remedies afforded by the RTKL. "In the plain language of the Right-to-Know Law, the General Assembly required citizens seeking the protections of the Right-to-Know Law to simply indicate

this intention by addressing the request to the open-records officer." General Assembly's Brief at 12.

While the General Assembly maintains that requests need not actually be delivered directly to an agency open-records officer, the RTKL, nonetheless, applies only to written requests actually addressed to the open-records officer, as the open-records officer is the only person authorized to accept RTKL requests under the law as written. The General Assembly explains that the RTKL was devised to put agencies on notice when the RTKL is implicated; thus, while the requestor "may not know who or where the right to know officer is . . . by addressing the request to the officer the requester puts trained employees on notice to forward the request to the open-records officer." Id. at 10. The General Assembly adds that, as most individuals requesting information make non-controversial requests and do not wish to incur RTKL fees or delays, there should be no default assumption that every written request to every employee is a RTKL request. Rather, the RTKL was devised for those seeking records who believe that they may need RTKL remedies in the event that an agency is not cooperative.

The Governor's Office of General Counsel ("GOGC") also filed an *amicus* brief in support of the position taken by the GCB. The GOGC agrees with the General Assembly's arguments and stresses the great burden upon agencies that results from the Commonwealth Court's decision. To illustrate, the GOGC asserts that in 2013 Commonwealth executive and independent agencies alone received over 6,500 RTKL requests, all properly addressed to an open-records officer. For many agencies, it states, treating all written requests as RTKL requests would render efficient and timely execution of agency duties under the RTKL nearly impossible. The GOGC references the Pennsylvania Historical Museum Commission as an example of an agency that,

while receiving only thirty to forty RTKL requests per year, responds to over 10,000 requests for information annually, both written and otherwise, without application of the RTKL. Thus, the GOGC maintains that if all requests for information were treated as RTKL requests, the impact would be overly burdensome.[4]

The Pennsylvania Freedom of Information Coalition and Newsmedia Association, on the other hand, write in support of the position taken by the OOR. Collectively, these *amici* argue that the RTKL should be broadly construed and deemed to afford requestors broad latitude in formatting their requests, as use of an OOR form is not mandatory under the RTKL. They further insist that all written requests should be deemed RTKL requests, and that the RTKL does not require a reference to the statute to validate such requests. In the view of these *amici*, the RTKL has placed the duty of delivering requests to the appropriate open-records officer upon agency employees and not upon the requestors, as the General Assembly did not intend technicalities to thwart requests, but established that agencies bear responsibility for misdirected requests. Thus, these *amici* posit that the Commonwealth Court majority's reading of the RTKL is

---

[4] The County Commissioner's Association and School Boards Association ("School Boards") have also submitted *amicus* briefs in support of the GCB, generally in agreement with the position taken by the GCB, the General Assembly and the GOGC. The School Boards go so far as to say that "a requester must put the open-records officer's proper address on a written request . . . . to pursue relief under the [RTKL]." School Boards' *Amicus* Brief at 5. The School Boards further explain that they treat the mandate to direct employees to forward RTKL requests as a training issue to ensure that RTKL requests do not linger on random fax machines or in school front office outboxes. To illustrate the absurdity of a construction of Section 703 that makes all written requests RTKL requests, the School Boards offer the example of emailed parent-teacher communications regarding a student's work. Under that construction, according to the School Boards, the parent's email would have to be forwarded to the appropriate open-records officer. Downs Racing LP and Greenwood Gaming & Entertainment, Inc., also write in support of the GCB arguing that, if we reach the issue of whether the records requested here are exempt from disclosure, they are, in fact, exempt from disclosure and the information sought by requestor is confidential.

the only interpretation that gives full effect to the RTKL. *Amici* argue that, while furtherance of greater transparency and public disclosure requires doubtful cases to be resolved by permitting public inspection, courts have and should take a functional approach focused on the substance of a given request, rather than the form. *Amici* conclude that the GCB's arguments fail to account for agencies that may have failed to comply with the law by naming an open-records officer in the first place. In *amici's* view, the GCB's interpretation places onerous burdens upon requestors and allows agencies to ignore the legitimate requests of those who are unaware of, or are otherwise unable to comply with, the RTKL.

### III.

In analyzing this matter, we are guided by the Statutory Construction Act of 1972. The Act makes clear that: "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). To that end, the general rule is that "[w]ords and phrases [are to] be construed . . . according to their common and approved usage[,]" id. § 1903(a), and "[e]very statute [is to] be construed, if possible, to give effect to all its provisions." Id. § 1921(a). The Act further provides, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Id. § 1921(b). Only where the operative statutory language is not explicit in conveying the intent of the General Assembly should courts look beyond the General Assembly's words to ascertain its intent. In doing so, as it becomes necessary, the Act provides that courts may ascertain such intent by looking to several enumerated considerations, including, *inter alia*, "[t]he mischief to be remedied[,]" "[t]he object to be attained[,]" and "[t]he consequences of a particular interpretation." Id. § 1921(c). It is presumed, under the Act, "[t]hat the General Assembly does not intend a result that is absurd, impossible

of execution or unreasonable[,]" and "[t]hat the General Assembly intends the entire statute to be effective and certain." Id. § 1922. Moreover, the Act explains that parts of statutes which are in *pari materia*, *i.e.*, statutory parts which relate to the same persons or things, are to be construed together wherever possible. Id. § 1932.

Addressing this latter section of the Act, as well as the Act in general, this Court recently affirmed that the principle of construing statutory parts harmoniously is one which is fundamental to our methodology of statutory construction. Thus, in Cozzone, supra, this Court explained that such statutory parts "are not to be construed as if one part operates to nullify, exclude or cancel the other, unless the statute expressly says so[,] [and if] they can be made to stand together, effect should be given to both as far as possible." 73 A.3d at 536 (citation omitted). Finally, statutory language must be read in context, that is, in ascertaining legislative intent, every portion of statutory language is to be read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute" as a whole. Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia, 4 A.3d 610, 622 (Pa. 2010) (citation omitted).

Applying these principles to the operative language in Section 703, we agree with the core position of the GCB and General Assembly. Specifically, we find that the plain language of the RTKL reveals an intention that citizens seeking the protections of the RTKL have to indicate their intention in this regard and place the respective agency on notice of that intention by addressing their requests, at least generally, to the agency's open-records officer in order to trigger the procedural provisions of the RTKL concerning the five-day time-frame to respond, deemed denials, and OOR review. The interpretive dispute focuses primarily upon the import of the statutory language which states requests "must be addressed to the open-records officer[.]" The asserted

ambiguity and point of contention concerning the import of this clause lies in the fact that it does not specifically identify who is required to "address" the written request to the open-records officer. The GCB, General Assembly and GOGC read these words as applying to the requestor, while the OOR and requestor posit that these words apply to all agency employees. But, the notion that this language is ambiguous depends upon improperly viewing it in isolation. When the language is properly read -- together and in conjunction with the rest of the statute -- the General Assembly plainly intended the words "must be addressed to the open-records officer" to place the onus on the requestor in addressing his or her own request.

We consider the statutory language which immediately precedes, and that which follows the clause at issue here. First, Section 703 follows Section 702, 65 P.S. § 67.702, which governs "Requests," and clearly places the onus on the requestor by stating, "If the requester wishes to pursue the relief and remedies provided for in this act, the request for access to records must be a written request." Under Section 702, the decision whether to make a records request in writing is up to the requestor, and no one is responsible for reducing the request to writing, but the requestor. Not to belabor the obvious, but the requestor is solely responsible for his own written request. Section 703, notably, is specific to just such "written requests," and it builds logically upon Section 702 by first informing the requestor how the requestor may submit his request: "A written request for access to records may be submitted in person, by mail, by e-mail, by facsimile or, to the extent provided by agency rules, by any other electronic means." There can be no reasonable dispute that, under the first sentence of Section 703, the decision as to how to submit a written request also belongs to the requestor, and the act of submitting the request is his burden as well.

The sentence following the "must be addressed" language at issue sets forth, in part, the requisite content of the written request: "A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested and shall include the name and address to which the agency should address its response." It is clear that the specificity and return address requirements obligate the requestor as well, and no one else. Viewing the disputed language within this obligatory context, we perceive no plausible ambiguity: it is clear that the General Assembly intended to place the onus on the requestor to address his own request to the appropriate employee, *i.e.*, the open-records officer.

The second sentence in Section 703 discussed by the parties confirms this construction, as it provides: "Employees of an agency shall be directed to forward requests for records to the open-records officer." If we were to read the prior sentence as the OOR and requestor suggest -- placing the onus on agency employees to themselves identify which requests not addressed to the open-records officer should be so "addressed," and then directing those requests to the officer -- one sentence would render the other mere surplusage. This is so because the latter sentence already requires agencies to direct their employees to forward record requests to the open-records officer. We do not believe the General Assembly intended such a redundancy, particularly when it requires construing the word "addressed" as if it meant something other than its common meaning.

Furthermore, in terms of strained redundancy, the OOR's argument is telling. On the one hand, the OOR argues that "must be addressed to the open-records officer" plainly places the onus on agency employees to do the "addressing," but then it argues that: "In the alternative, the two sentences in Section 703 . . . require a particular action but permit a failsafe if that action is not followed." Appellee's Brief at 28. So then,

according to the OOR, Section 703 first requires that agency employees address or direct requests to the open-records officer, and then mandates that agency employees forward the requests to the open-records officer (again, perhaps) as a "failsafe," in case the agency employees neglect to direct requests to the open-records officer in the first instance. It is much more logical to conclude that the onus is where the statute says it is -- on the requestor to address his request to the open-records officer -- and that the intended "failsafe," in the event that a properly addressed request ends up in the hands of some other employee, is the direction that employees forward the request to the open-records officer of the agency.

Beyond that, it is clear that the import of Section 703's directive "must be addressed to the open-records officer" is that the requestor is required to include (or otherwise make) at least some positive indication that the intended recipient of the written request is the agency's open-records officer, whether that officer be identified by name or by title, whether the requestor sends his request to the open-records officer's specific email address or fax number, or whether the requestor actually places his request directly in the hands of the open-records officer. Thus, in the context of this case, the requestor easily could have complied with the plain language of the statute by positively indicating his intention that the open-records officer for the GCB was his intended recipient, and could have done so by emailing his request directly to the open-records officer, by an express designation in the subject line or body of his email expressly commanding the attention of the open-records officer, or otherwise expressly indicating that the open-records officer was the intended recipient. By addressing the open-records officer in some logical, reasonable fashion – which imposes no great burden -- the requestor gives all employees so contacted the notice required that his written request is submitted pursuant to the RTKL. And while the requestor might

accomplish the same by specifically citing or otherwise expressly referring to the RTKL, the RTKL places no such burden on requestors and, therefore, we cannot. The General Assembly's express notice requirement requires that the request be addressed to the open-records officer, not a citation to the RTKL. It is sufficient, as well as required, that the requestor address his request to the open-records officer in some meaningful way.

Here, the requestor failed to address his request to the open-records officer in any fashion, and this failure invalidated his request – albeit only insofar as it relates to any rights that he would have had to treat the open-records officer's failure to respond as a deemed denial by the same, thus entitling him to appeal to the OOR. His request for access to public records was plainly deficient under the second sentence of Section 703, which requires requestors to address written requests to open-records officers.

Furthermore, the following sentence, "Employees of an agency shall be directed to forward requests for records to the open-records officer," addressing agency duties, does not alter that requirement. The panel majority below read this provision as stating "agency employees must 'forward requests' to that officer." PGCB, 48 A.3d at 508.[5] That, however, is not exactly what Section 703 actually provides. What it does provide is that agency employees "shall be directed to forward requests," and the passive, two-

---

[5] Mentioning Section 703 in passing, this Court made a similar observation in Commonwealth, Office of Governor v. Donahue, 98 A.3d 1223, 1239 (Pa. 2014) that: "Section 703 of the RTKL obliges agency employees who receive RTKL record requests to forward the requests to the agency's open-records officer." While we do not now state a contrary view concerning the ultimate effect of the language actually employed in Section 703, given that the proper construction of Section 703 is now directly at issue, we observe that the dispute presented here lends itself to a heightened precision in construing the import of Section 703.

step language of the provision fails to specifically identify the person or entity responsible for giving that "direction to forward."[6]

As we have explained, Section 703 requires the requestor to address his request to the open-records officer. Between the parties and *amici*, the consensus view is that the separate requirement that agency employees "be directed" to forward the request falls on the agency. Whether that is the better view or not is of no import to our decision here. This is not a case where a request was properly addressed to the open-records officer, but was received by another employee, and was not forwarded to the open-records officer. Thus, even assuming that the GCB never directed its employees to forward all record requests to the GCB open-records officer, such failure on the part of the agency has no bearing on the requestor's initial obligation to properly address his request to the open-records officer, if he intended to invoke the provisions of the RTKL. Based upon the rules of statutory construction, we cannot disregard the express requirement that requestors address their requests to the designated open-records officer, and we decline to construe Section 703 as if the sentence addressing agency employees nullifies the immediately prior sentence, since both can be made to stand together. Rather, we conclude that all of the provisions of Section 703 are effective,

---

[6] The General Assembly has apparently recognized this ambiguity and has taken steps to resolve it. In a September 23, 2014, version of the 2013 Pennsylvania Senate Bill Number 444, a proposed amendment to the RTKL (Printer's No. 2330), legislators have proposed an amendment to Section 703 which would allow requesters to address written requests **to either the administrative office of the agency, or** to the designated open-records officer. The proposed amendment would then clarify that the administrative office would be required to promptly forward requests to the open-records officer. As it stands as of the date of this Opinion, however, the language of the current Section 703 remains in effect. We must interpret and apply the statutory language as written.

including the requirement that requestors must address their RTKL requests to the designated open-records officer in the first instance.

There is one remaining point, not strictly essential to the decision here, but discussed below, which warrants our attention: what is the scope of an agency's duty to direct its employees to forward requests for records to the open-records officer? As noted, the dissenting opinion below raised the concern that "an unaddressed request written on the back of a brown paper bag and given to a PennDot plow driver by the side of the road on a snowy winter night [might constitute] a valid right-to-know law request." PGCB, 48 A.3d at 516. Again, we now hold that for a written request to constitute a valid RTKL request under Section 703, the requestor must address his request to the open-records officer. Beyond that, as the panel majority below aptly noted, the matter before us does not involve plow drivers, brown paper bags or snowy winter nights, but an email to a press aide in the GCB's Office of Communications and Legislative Affairs, and copied to the GCB's Director of Media Relations and Chief Enforcement Counsel. We will leave it to the General Assembly to refine its intention respecting which employees are to receive and forward requests for records (particularly those made on brown paper bags), unless and until such a factual scenario is part of an actual controversy presented to the Court in a proper case. Until then, it is sufficient to hold, as we do, that requestors must address their written requests to an agency's designated open-records officer in order to trigger the five-day agency obligation, the deemed denial consequence, and the appellate provisions of the RTKL, and agencies are independently responsible for determining how to implement the provision requiring a direction that employees forward such records requests to the open-records officer.

As we recently held in <u>Commonwealth, Office of Governor v. Donahue</u>, 98 A.3d at 1239, we presume that the agencies of this Commonwealth will act in good faith in forwarding requests addressed to the open-records officer, and upon the open-records officer's receipt of a forwarded request, the agency then has five business days to respond. Here, as in <u>Donahue</u>, because the OOR's interpretation does not give effect to all of the relevant statutory language, we reject the OOR's construction. Accordingly, we reverse the order of the Commonwealth Court.

Jurisdiction is relinquished.

Former Justice McCaffery did not participate in the decision of this case.

Messrs. Justice Saylor, Eakin and Baer, Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Justice Stevens files a concurring opinion.