# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heather Honey             :
                            :
      v.               :   No. 57 C.D. 2023
                            :

Lycoming County Offices   :
of Voter Services         :
                            :

Appeal of: Al Schmidt, in his  :
Official Capacity as Secretary :
of the Commonwealth    :   Argued:  December 6, 2023

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE CEISLER                             FILED:  March 4, 2024

Appellant Al Schmidt, in his Official Capacity as Secretary of the Commonwealth (Secretary),[1] appeals from the Court of Common Pleas of Lycoming County's (Common Pleas) December 16, 2022 order. Through that order, Common Pleas reversed the Pennsylvania Office of Open Records' (OOR) January 6, 2022 Final Determination.  In that Final Determination, OOR had denied Appellee

---

[1] Leigh M. Chapman (Chapman) was the Acting Secretary of the Commonwealth at the time of this appeal's filing. However, Secretary was then appointed in an acting capacity by Governor Josh Shapiro on January 17, 2023, and officially assumed his position by operation of law effective June 29, 2023. As a consequence, Secretary was automatically substituted for Chapman as the named appellant in this matter pursuant to Pennsylvania Rule of Appellate Procedure 502(c), Pa. R.A.P. 502(c).

Heather Honey's (Honey) Right-to-Know Law (RTKL)[2] request for a digital copy of the ClearVote Cast Vote Record (CVR) for the 2020 General Election from Lycoming County's Electronic Voting System (EVS).[3] After careful review, we reverse.

## I. Background

As cogently explained by Common Pleas, the genesis of this matter occurred when Honey filed her RTKL request with the Lycoming County Office of Voter Services (Voter Services) on October 20, 2021, in which she sought

> a "[d]igital copy of the [CVR] for every precinct tabulator and central tabulator used in the 2020 General Election."[FN3]
>
> > [FN3] . . . ClearVote is the election management system that [Voter Services] uses to conduct elections in Lycoming County. In elections utilizing the ClearVote system, each voter fills out a physical ballot and inserts it into a scanner, which reads the ballot and transmits the results to a "tabulator," a piece of equipment that counts votes. Each precinct has one scanner and one associated tabulator. The results from each precinct tabulator are then transferred to the central tabulator for Lycoming County. Ballots not cast on [E]lection [D]ay — such as mail-in and absentee ballots — are processed directly by the central tabulator. Thus, the CVR for each precinct tabulator is a spreadsheet showing raw data associated with the ballots cast at that precinct, and the CVR for the central tabulator is a similar spreadsheet showing raw data associated with every ballot cast in Lycoming County.

---

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[3] Per Section 1101-A of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended*, added by the Act of July 11, 1980, P.L. 600, EVS is defined as follows: "a system in which one or more voting devices are used to permit the registering or recording of votes and in which such votes are computed and tabulated by automatic tabulating equipment. The system shall provide for a permanent physical record of each vote cast." 25 P.S. § 3031.1.

On November 18, 2021, [Voter Services] denied [Honey's] RTKL request on the basis that "[t]he contents of ballot boxes and voting machines are not public pursuant to [Section 308 of] the Election Code[,] 25 P.S. § 2648."[FN4] On November 24, 2021, [Honey] appealed that decision to the [OOR], which solicited briefing and other relevant information from the parties.

> [FN4] Section [308] of the Election Code provides that most records and documents in the possession of each county's board of elections are open to public inspection, except for "the contents of ballot boxes and voting machines and records of assisted voters. . . ." 25 P.S. § 2648.

On January 6, 2022, the OOR issued a Final Determination denying [Honey's] appeal. In the Final Determination, the OOR first discussed [Section 308] and its exception to public inspection. The OOR reviewed the affidavit of Forrest Lehman ([]Mr. Lehman[]), Director of Elections for Lycoming County, which provided information about the process by which votes are scanned and stored in Lycoming County. Mr. Lehman ultimately asserted [Voter Services'] belief that CVRs fall under the exception to public inspection in [Section 308,] because "[r]eviewing a CVR is the digital equivalent of inspecting the contents of a ballot box, one ballot at a time." The OOR also reviewed [Honey's] argument that CVRs do not fall under the exception in [Section 308] but are instead analogous to other records that are available for public inspection.

After considering the parties' arguments, the OOR denied [Honey's] appeal on the basis that it found Mr. Lehman credible and knowledgeable, rendering it improper for the OOR to "substitute its judgment for that of those with far more familiarity with the issues." Specifically, the OOR determined that "the CVR is the digital equivalent of the contents of ballot boxes," and thus not a public record under [Section 308] of the Election Code.

Common Pleas Op., 12/16/22, at 1-2 (some footnotes omitted).

Honey then appealed the OOR's decision to Common Pleas. On May 16, 2022, Appellees Jeffrey J. Stroehmann, Donald C. Peters, and Joseph D. Hamm (collectively Intervenors) filed a joint petition to intervene, which Common Pleas

3

subsequently granted. Common Pleas then held two days of evidentiary hearings in June 2022, and subsequently issued an opinion and order, through which it adjudicated Honey's appeal, on December 16, 2022.[4]

In its opinion, Common Pleas first addressed the assertion that Honey and Intervenors lacked standing to pursue the appeal. With regard to Honey, Common Pleas concluded that she did not have standing to obtain the CVR she had requested, because she was registered to vote in Lebanon County and, thus, was not a "qualified elector" under the Election Code. Common Pleas Op., 12/16/22, at 47-49.[5] Common Pleas did not reach the same conclusion regarding Intervenors, and instead held that they had standing to pursue in their own right the claims Honey had put forth on her behalf. *Id.* at 49-50.

Moving on to the merits, Common Pleas then analyzed the language used in Section 308 of the Election Code to determine whether CVRs were rendered exempt from public disclosure. Common Pleas broke its statutory analysis down into three parts, each of which focused upon a single word or phrase used in the statute: "ballot boxes," "voting machines," and "contents." First, it concluded that the plain meaning of "ballot boxes" in the Election Code was consistent with the dictionary definition of the term as a "locked box into which ballots are deposited after voting[,]" as well as that "the sealed bags attached to scanners, into which ballots fall after they are

---

[4] Common Pleas was the ultimate finder of fact in this matter, as ordained by the RTKL, and consequently conducted a *de novo*, plenary review of the OOR's decision. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

[5] Curiously, Common Pleas did not include language in the order attached to its December 16, 2022 opinion that formally dismissed Honey as a party or otherwise addressed her standing to challenge Voter Services' denial of her RTKL request. *See* Common Pleas Op., 12/16/22, at 73-74. We, however, agree with Common Pleas' assessment that Section 308 barred Honey from obtaining the records she sought, due to the fact that she was registered as a voter in Lebanon County, rather than Lycoming County, at the time she filed that request.

4

scanned, are 'ballot boxes.'" *Id.* at 53-54. Second, Common Pleas noted that the Election Code did not define "voting machines," but concluded that, under existing case law and certain provisions of the Election Code, not every EVS constituted a voting machine for purposes of this statutory scheme. *Id.* at 54-56. On that basis, it ruled that the optical scanners used to record the votes made on paper ballots in Lycoming County did not qualify as voting machines under the Election Code. *Id.* at 57. Finally, Common Pleas deemed the word "contents" to be ambiguous, stating that

> [c]learly, the term "contents" as used in the Election Code covers at least the physical sense of ballots physically inside of a ballot box. However, it is unclear whether the term also includes things that are contained in "ballot boxes and voting machines" more abstractly, such as intangible information or ideas that are "within" a ballot box or voting machine in a less-than-physical sense.

*Id.* at 58. As a result, Common Pleas concluded "that the phrase 'contents of ballot boxes or voting machines' as used in [Section 308] is susceptible to multiple reasonable readings, and thus does not have a single plain and unambiguous meaning." *Id.* Common Pleas then turned to the rules of statutory construction to resolve this putative ambiguity, considering the history and purpose of both Section 308 and the Election Code as a whole; the Department of State's (Department) administrative reading of Section 308; and the consequences of adopting each side's preferred interpretation. *Id.* at 58-67. Ultimately, Common Pleas ruled that the public access restriction imposed by Section 308 was to be construed narrowly, and concluded that the General Assembly "intended the 'contents' of ballot boxes or voting machines to refer to voted ballots physically deposited into ballot boxes and the mechanical inner workings of voting machines, rather than the information 'contained' in those physical items." *Id.* at 68.

5

Applying this logic to the matter-at-hand, Common Pleas held that the CVR in this matter was not shielded from disclosure by Section 308 and, thus, was a public record that could be obtained via an RTKL request. *Id.* Common Pleas then reasoned that disclosure of the CVR would not violate the Pennsylvania Constitution's ballot secrecy requirement, because the record evidence established "that the order of the numbered list of voters [in the CVR] does not necessarily correspond to the order in which ballots are cast"; in Common Pleas' view, this data randomization rendered tenuous any concerns that disclosure would result in a breach of that requirement. *Id.* at 69-72. As a result, Common Pleas ordered Voter Services to provide Intervenors with the CVR from the 2020 General Election in Lycoming County, but stayed its order for 30 days, so that it would not go into effect until the appeal window had closed. *Id.* at 73-74.

This timely appeal followed.

## II. Discussion

Secretary presents two arguments for our consideration, which we summarize as follows.[6] First, Common Pleas erred by concluding that Section 308 of the Election Code is ambiguous. To the contrary, Section 308's plain language exempts CVRs from disclosure for three reasons: (a) a CVR is the electronic, modern-day equivalent of all voted ballots contained in a ballot box; (b) EVSs like the optical scanners used by Lycoming County qualify as voting machines under the Election Code, and CVRs are the contents of those EVSs; and (c) reading Section 308 to exempt CVRs from disclosure is consistent with other provisions of the Election

---

[6] "When[, as here,] the court of common pleas is the 'Chapter 13' or reviewing court, our appellate review is limited to whether the trial court has committed an error of law and whether the findings of fact are supported by substantial evidence." *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1123 n.3 (Pa. Cmwlth. 2017) (citing *Twp. of Worcester v. Off. of Open Recs.*, 129 A.3d 44, 49 n.2 (Pa. Cmwlth. 2016)).

6

Code that only authorize public access to the contents of ballot boxes and voting machines upon allegations of error or fraud. Secretary's Br. at 14-20. Second, even if Common Pleas correctly concluded that Section 308 was ambiguously worded, the lower court still erred by failing to give deference to the Department's interpretation of the statute, which was that CVRs constitute the modern version of ballot box contents, as well as that optical scanners like the ones used to record votes in Lycoming County are the modern equivalent of voting machines. *Id.* at 20-25.

Generally speaking, the purpose of the RTKL is "to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials[,] and make public officials accountable for their actions." *Off. of Governor v. Raffle*, 65 A.3d 1105, 1107 n.1 (Pa. Cmwlth. 2013). Accordingly, local agencies are statutorily required to "provide public records [to individuals who request them] in accordance with [the RTKL]." Section 302(a) of the RTKL, 65 P.S. § 67.302(a). However, that does not mean that all local agency records are "public" and eligible for dissemination upon request. Per Section 305(a) of the RTKL:

> A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:
>
> . . . .
>
> (3) the record is exempt from disclosure under any other [f]ederal or [s]tate law or regulation or judicial order or decree.

65 P.S. § 67.305(a); *accord* Section 102 of the RTKL, 65 P.S. § 67.102 (defining "public record" in relevant part as "[a] record, including a financial record, of a Commonwealth or local agency that . . . (2) is not exempt from being disclosed under any other [f]ederal or [s]tate law or regulation or judicial order or decree"). In other words, the RTKL's presumption that all records possessed by a local or state agency

7

are public in nature, and are thus disclosable to a requester, yields where a statutory exemption exists for a certain kind of record.

Secretary, through his first argument, posits that Section 308 of the Election Code establishes such an exemption regarding public disclosure of CVRs. This assertion presents a pure question of statutory interpretation; thus, "our standard of review [here] is *de novo*, and our scope of review is plenary and non-deferential." *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020).

> The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). In pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Com*[.] *v. McClintic*, . . . 909 A.2d 1241 ([Pa.] 2006). Thus, statutory construction begins with examination of the text itself. [*Se.*] *Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).
>
> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).
>
> Moreover, although we must "listen attentively to what a statute says[,] [o]ne must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, . . . 788 A.2d 955, 962 ([Pa.] 2001). We may not insert a word the legislature failed to supply into a statute. *Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa. Cmwlth. 2004).

*Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "However, if we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory

analysis, wherein we may consider numerous relevant factors." *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013) (citing 1 Pa. C.S. § 1921(c)). "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014). Regardless of whether a statute is deemed ambiguous or not, our rules of construction forbid a court from adopting an interpretation that will produce "a result that is absurd, impossible of execution[,] or unreasonable." 1 Pa. C.S. § 1922(1). Furthermore,

> [w]hen construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. *Com. v. Mayhue*, 639 A.2d 421, 439 (Pa. 1994). Statutory language must be read in context, "together and in conjunction" with the remaining statutory language. [*Pa. Gaming Control Bd.*] *v. Off. of Open Recs.*, 103 A.3d 1276, 1284-85 (Pa. 2014) (citing *Bd. of Rev. of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010)).
>
> . . . .
>
> A fundamental principle in statutory construction is that we must read statutory sections harmoniously. *Off. of Open Recs.*, 103 A.3d at 1284-85. Parts of a statute that are *in pari materia*, *i.e.*, statutory sections that relate to the same persons or things or the same class of persons and things, are to be construed together, if possible, as one statute. 1 Pa. C.S. § 1932. "If they can be made to stand together, effect should be given to both as far as possible." *Off. of Open Recs.*, 103 A.3d at 1284 (quoting *Kelly v. City of Phila.*, 115 A.2d 238, 245 (Pa. 1955)). In ascertaining legislative intent, statutory language is to be interpreted in context, with every statutory section read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute" as a whole. *Bd. of Rev. of Taxes*, 4 A.3d at 622. We must presume that in drafting the statute, the General Assembly intended the entire statute, including all of its provisions, to be effective. 1 Pa. C.S. § 1922. Importantly, this presumption requires

9

that statutory sections are not to be construed in such a way that one section operates to nullify, exclude or cancel another, unless the statute expressly says so. *Cozzone ex rel. Cozzone v. Workers' Comp. Appeal Bd. (PA Mun*[.]*/E*[.] *Goshen Twp.)*, 73 A.3d 526 (Pa. 2013); *Off. of Open Recs.*, 103 A.3d at 1284-85.

*Tr. Under Agreement of Taylor*, 164 A.3d 1147, 1155, 57 (Pa. 2017).

Turning to Section 308 of the Election Code, this statute reads as follows, in full:

The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, **except the contents of ballot boxes and voting machines and records of assisted voters**, shall be open to public inspection, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto: Provided, however, That such public inspection thereof shall only be in the presence of a member or authorized employe of the county board, and shall be subject to proper regulation for safekeeping of the records and documents, and subject to the further provisions of this act: And provided further, That general and duplicate returns, tally papers, affidavits of voters and others, and all other papers required to be returned by the election officers to the county board sealed, shall be open to public inspection only after the county board shall, in the course of the computation and canvassing of the returns, have broken such seals and finished, for the time, their use of said papers in connection with such computation and canvassing.

25 P.S. § 2648 (emphasis added). Thus, by its plain language and with relevance to this case, Section 308 exempts from public disclosure "the contents of ballot boxes and voting machines[.]" *Id.*

10

Secretary does not dispute Common Pleas' observation that the term "ballot boxes" is not specifically defined in the Election Code, or that this phrase, when defined according to its commonly understood meaning and applied to this situation, clearly refers to the sealed bags that catch ballots after they have been scanned. He, however, challenges Common Pleas' conclusion that "voting machines," as used in Section 308, does not encompass EVSs like the ones used in Lycoming County, as well as Common Pleas' determination that CVRs do not constitute the "contents" of those voting machines or of the ballot boxes.

We agree. Admittedly, the Election Code is not a model of clarity with regard to establishing what constitutes a "voting machine." This term is not specifically defined therein, even though it is used throughout in both single and plural form, and despite the fact that the General Assembly titled an entire article of this law as "Voting Machines." Tit. 25 P.S., Ch. 14, Art. XI, Sections 1101-18 of the Election Code, 25 P.S. §§ 3001-3018; *see, e.g.*, Sections 404, 414, 530, 1216-17, 1226-27, 1230, 1404, 1702-03, 1818, 1824, and 1830 of the Election Code, 25 P.S. §§ 2674, 2684, 2730, 3056-57, 3066-67, 3070, 3154, 3262-63, 3518, 3524, 3530. Nor is the relationship between EVSs and voting machines, or lack thereof, straightforwardly apparent from the Election Code's text. Article XI-a of the Election Code, which specifically pertains to EVSs, contains what appears to be contradictory language on this point. On one hand, this article includes multiple references that suggest that such machines are components of EVSs. *See* Section 1105-A of the Election Code, 25 P.S. § 3031.5(b)[7] (emphasis added) (stating in relevant part: "With respect to any [EVS] approved for use in this Commonwealth by the secretary, the report of the secretary shall specify the capacity of the components of that system, the number of

---

[7] Added by the Act of July 11, 1980, P.L. 600.

11

voters who may reasonably be accommodated by the voting devices and automatic tabulating equipment which comprise such system and the number of clerks and **machine inspectors**."); Section 1108-A of the Election Code, 25 P.S. § 3031.8[8] (provision titled "Payment for machines" that requires "[t]he county commissioners or such other authority as levies the taxes for county purposes of any county which adopts an [EVS to], upon the purchase, lease or other procurement thereof, provide for payment therefor by the county"); Section 1112-A of the Election Code, 25 P.S. § 3031.12[9] (emphasis added) (stating, in relevant part: "When the votes for presidential electors are counted [in voting districts that use EVSs], the votes appearing upon the counter or registering device corresponding to the ballot label containing the names of the candidates for President and Vice-President of any party or body shall be counted as votes for each of the candidates for presidential elector of such party or body, and thereupon all candidates for presidential elector shall be credited, in addition, with the votes cast for them upon the ballots deposited in the **machine**, as provided in this section."); Section 1120-A(b) of the Election Code, 25 P.S. § 3031.20(b)[10] (emphasis added) (stating in relevant part: "If any electronic voting system or any component thereof being used in any election shall become inoperable during such election, it shall, if possible, be repaired or another **machine** substituted by the custodian or county board of elections as promptly as possible[.]"). On the other hand, this article *also* expressly mandates that "[u]pon the installation of an electronic voting system in any election district, the use therein of paper ballots and of **voting machines** shall be discontinued, except as otherwise provided herein."

---

[8] Added by the Act of July 11, 1980, P.L. 600.

[9] Added by the Act of July 11, 1980, P.L. 600.

[10] Added by the Act of July 11, 1980, P.L. 600.

Section 1104-A of the Election Code, 25 P.S. § 3031.4[11] (emphasis added). The same inconsistency is also present elsewhere in the Election Code. Some portions indicate that an EVS is a type of voting machine, or that the two terms are effectively synonymous. *See* Sections 1702 and 1703 of the Election Code, 25 P.S. §§ 3262-63 (Section 1702 mentions petitions for recanvassing votes cast via voting machines, without making reference to EVSs, but Section 1703 establishes that Section 1702 petitions can be filed regarding votes cast through EVSs *or* voting machines). Others, however, imply that EVSs and voting machines may, in fact, be entirely different kinds of apparatuses. *See* Section 1404(e) of the Election Code, 25 P.S. § 3154(e) (setting forth three slightly different vote recanvass and recount procedures, the precise applicability of each depending on whether a given election district used "voting machines," "paper ballots other than those used in conjunction with an [EVS]," or "an [EVS] utilizing paper ballots," while also specifying that, where an election district used "any other type of [EVSs]," a vote recanvass or recount must be conducted in a manner "similar to the procedure specified in [25 P.S. § 3154(e)(1)] for voting machines").

These impediments are not insurmountable for us, however. "Where a term is not [statutorily] defined, . . . 'words and phrases shall be construed according to rules of grammar and according to their common and approved usage.'" *P.R. v. Pa. Dep't of Pub. Welfare*, 759 A.2d 434, 437 (Pa. Cmwlth. 2000). "In ascertaining the common and approved usage or meaning, a court may resort to the dictionary definitions of the terms left undefined by the legislature." *Mountz v. Columbia Borough*, 260 A.3d 1046, 1050 n.4 (Pa. Cmwlth. 2021) (quoting *Leventakos v. Workers' Comp. Appeal Bd. (Spyros Painting)*, 82 A.3d 481, 484 n.4 (Pa. Cmwlth.

---

[11] Added by the Act of July 11, 1980, P.L. 600.

2013)). Generally speaking, Merriam-Webster defines "machine" as "a mechanically, electrically, or electronically operated device for performing a task."[12] Therefore, a "voting machine" can be described as a device of this nature that is designed to allow for the performance of that specific task (*i.e.*, voting). Furthermore, "voting machine" has itself been defined in common parlance with some specificity. Merriam-Webster describes it as follows: "a mechanical device for recording and counting votes cast in an election."[13] Similarly, the Cambridge Dictionary states that a "voting machine" is "a machine used to automatically record and count votes in an election."[14] Even more precisely, the United States Election Assistance Commission (EAC)[15] describes a "voting machine" as "[t]he mechanical,

---

[12] *Machine*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/machine (last modified Feb. 14, 2024).

[13] *Voting machine*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/voting%20machine (last modified Feb. 3, 2024).

[14] *Voting machine*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/voting-machine (last visited Mar. 1, 2024).

[15] The EAC

> was established by the Help America Vote Act of 2002 (HAVA)[, 42 U.S.C. §§ 15301-15545]. The EAC is an independent, bipartisan commission charged with developing guidance to meet HAVA requirements, adopting voluntary voting system guidelines, and serving as a national clearinghouse of information on election administration. The EAC also accredits testing laboratories and certifies voting systems, as well as audits the use of HAVA funds.

> Other responsibilities include maintaining the national mail voter registration form developed in accordance with the National Voter Registration Act of 1993[, 52 U.S.C. §§ 20501-20511].

> HAVA established the Standards Board and the Board of Advisors to advise the EAC. The law also established the Technical

**(Footnote continued on next page…)**

electromechanical, and electric components of a voting system that the voter uses to view the ballot, indicate his/her selections, and verify those selections. In some instances, the voting machine also casts and tabulates the votes."[16]

The question then becomes whether the components of Lycoming County's EVS constitute "voting machines." Section 1101-A of the Election Code defines an EVS as "a system in which one or more voting devices are used to permit the registering or recording of votes and in which such votes are computed and tabulated by automatic tabulating equipment. The system shall provide for a permanent physical record of each vote cast." 25 P.S. § 3031.1. "Automatic tabulating equipment" is defined in that same part of the Election Code as "any apparatus which automatically examines and computes votes registered on paper ballots, ballot cards[,] or district totals cards or votes registered electronically and which tabulates such votes." *Id.* "Voting device" is also defined therein as

> either an apparatus in which paper ballots or ballot cards are used in connection with an implement by which a voter registers his votes with ink or other substance or by punching, or an apparatus by which such votes are registered electronically, so that in either case the votes so registered may be computed and tabulated by means of automatic tabulating equipment.

Guidelines Development Committee to assist the EAC in the development of voluntary voting system guidelines.

The four EAC commissioners are appointed by the president and confirmed by the U.S. Senate. The EAC is required to submit an annual report to Congress as well as testify periodically about HAVA progress and related issues. The [EAC] also holds public meetings and hearings to inform the public about its progress and activities.

*About*, EAC, https://www.eac.gov/about (last visited Mar. 1, 2024).

[16] *Glossary of Election Terminology*, EAC (July 16, 2021), https://www.eac.gov/sites/default/files/glossary_files/Glossary_of_Election_Terms_EAC.pdf.

*Id.* Applying these three definitions to the matter-at-hand, it is evident that the optical scanners used by Lycoming County, which receive filled-out paper ballots, scan the votes recorded thereon, and transmit the results to a database, are voting devices that contain automatic tabulating equipment, and which are part of Lycoming County's EVS. These voting devices are undoubtedly mechanical, electrical, electromechanical, or electronic components of a voting system that are specifically used for the task of voting, including with regard to the casting and tabulation of votes. Therefore, these devices also fit the generally understood definition of "voting machines."

Again, we recognize that the General Assembly has directed, via Section 1104-A of the Election Code, that "[u]pon the installation of an [EVS] in any election district, the use therein of paper ballots and of voting machines shall be discontinued, except as otherwise provided herein." 25 P.S. § 3031.4. We also remain cognizant, however, that we must endeavor to harmonize seemingly inconsistent statutory language, within reason, to the fullest possible extent. *Taylor*, 164 A.3d at 1157. As noted *supra*, Article XI-a includes multiple references suggesting that machines are components of EVSs. Tit. 25 P.S., Ch. 14, Art. XI-a. In addition, Section 1702 and 1703, when read together, indicate that "EVS" is synonymous with "voting machine" under the Election Code. *See* 25 P.S. §§ 3262-63. We therefore come to two conclusions. First, the General Assembly's usage of the term "voting machines" in the Election Code is beset by inconsistencies and poor draftsmanship. Second, we must read Section 1104-A's reference to voting machines as pertaining to mechanical devices used in the voting process, but not to similarly deployed electronic devices, in order to harmonize those inconsistencies and to allow for the

16

Election Code's provisions to be given the fullest effect possible.[17] In other words, we hold that EVS components that are used directly in the processing and recordation of votes must also be considered voting machines under the Election Code.

As for the meaning of "contents," that word is not defined in the Election Code either. Per Merriam-Webster, though, it means "something contained."[18] CVRs thus qualify as "contents" under the Election Code, regardless of whether the container holding the CVRs is deemed to be a voting machine or a ballot box. Common Pleas, however, essentially found that the CVR in this instance was digitally equivalent to the information recorded on physical ballots, but narrowly construed Section 308's usage of "contents" as only "refer[ring] to voted ballots physically deposited into ballot boxes and the mechanical inner workings of voting

---

[17] We also note that our Court, in a single-judge opinion issued in another matter, recently ruled that electronic devices do not constitute voting machines under the Election Code. *See In re Recount of Berks Cnty. Gen. Election of Nov. 8, 2022*, 296 A.3d 64, 77 (Pa. Cmwlth.) (single-judge op.) (Wallace, J.), *aff'd* 297 A.3d 687 (Pa. 2023). However, the analysis in that matter did not address the meaning of "voting machines" with the same level of detailed analysis that we have in this matter, but merely predicated that conclusion upon a smattering of cases that *also* did not contain thorough analyses of this term's meaning. *See id.* (citing and quoting *Banfield v. Cortes*, 110 A.3d 155, 170 (Pa. 2015); *Dayhoff v. Weaver*, 808 A.2d 1002, 1010 n.21 (Pa. Cmwlth. 2002); and *In re Gen. Election for Twp. Supervisor of Morris Twp., Wash. Cnty.*, 620 A.2d 565, 568-69 (Pa. Cmwlth. 1993)). Given this, as well as the fact that the Supreme Court's *per curiam* affirmance of *Berks County* only pertained "to [its] interpretation of Sections 1701 and 1703 of the Election Code, 25 P.S. §§ 3261, 3263, [(which relate to petitions requesting a vote recount),]" *In re Recount of Berks Cnty. Gen. Election of Nov. 8, 2022*, 297 A.3d 687, 688 (Pa. 2023), we overrule the single-judge *Berks County* opinion to the very limited extent that it stands for the proposition that electronic devices cannot be voting machines for purposes of the Election Code. *See Com. v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996) (in instances where Supreme Court affirms lower court decision via *per curiam* order, Supreme Court endorses rationale underpinning that decision only to extent higher tribunal affirms on express basis of opinion issued by lower court).

[18] *Contents*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/contents (last modified Feb. 10, 2024).

machines, rather than the information 'contained' in those physical items." Common Pleas Op., 12/16/22, at 68; *see id.* ("Only three such things have been made inaccessible: the contents of ballot boxes, the contents of voting machines, and the records of assisted voters. The [General Assembly] did not exempt records that were the 'equivalents' or 'analog[ue]s' of those things from public access."). We find that interpretation flawed for two reasons. First, the voting machines used by Lycoming County compiled recorded votes in digital form, rather than physical. Thus, the machines had no "contents" beyond those digitized records, *i.e.*, the CVR. Second, it may appear at first blush that Section 308 is ambiguous in this context, in that it is not clear whether the ballot boxes' "contents" are just the physical ballots themselves or also include the voting data from those ballots. However, this apparent ambiguity disappears by virtue of Common Pleas' effective determination that the CVR is digitally equivalent to those physical ballots. It would produce an absurd result if physical ballots were protected from public disclosure, but digital analogues of those very same ballots were freely available upon request, as what is special about the ballots is not so much the form which they take, but the voting information which they contain. Consequently, Common Pleas erred by ruling that the word "contents" was ambiguous in this instance, that the CVR was not the contents, in digital form, of ballot boxes and voting machines, and that the CVR was thus not exempt from public disclosure.

18

## III. Conclusion

In accordance with the foregoing analysis, we reverse Common Pleas' December 16, 2022 order.[19]

_____
ELLEN CEISLER, Judge

---

[19] Due to our resolution of this matter in Secretary's favor, we need not address the merits of his remaining argument.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Heather Honey | : | |
| | : | |
| v. | : | No. 57 C.D. 2023 |
| | : | |
| Lycoming County Offices | : | |
| of Voter Services | : | |
| | : | |
| Appeal of: Al Schmidt, in his | : | |
| Official Capacity as Secretary | : | |
| of the Commonwealth | : | |

# **O R D E R**

AND NOW, this 4th day of March, 2024, it is hereby ORDERED that the Court of Common Pleas of Lycoming County's December 16, 2022 order is REVERSED.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Heather Honey | : |
| | : No. 57 C.D. 2023 |
| v. | : |
| | : Argued: December 6, 2023 |
| Lycoming County Offices | : |
| of Voter Services | : |
| | : |
| Appeal of: Al Schmidt, in his Official | : |
| Capacity as Secretary of the | : |
| Commonwealth | : |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge

DISSENTING OPINION
BY JUDGE McCULLOUGH                    FILED: March 4, 2024

I would affirm the trial court in this matter as it correctly interpreted the unambiguous language of the Pennsylvania Election Code (Election Code)[1] in finding that a cast vote record (CVR) is not and cannot be construed as part of the ballot boxes or voting machines. Here, there is no need to look further than the statutory language itself.[2] Section 308 of the Election Code provides in relevant part:

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

[2] When engaging in statutory construction, a court's duty is to give effect to the legislature's intent and to give effect to all of a statute's provisions. The
**(Footnote continued on next page…)**

The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, *except the contents of ballot boxes and voting machines* and records of assisted voters, shall be open to public inspection, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto[.]

25 P.S. § 2648 (emphasis added).

It is important to note that Lycoming County only utilizes paper ballots, which are inserted into a scanner after voting and then dropped into a black box (*i.e.*, "black bag"). (Reproduced Record (R.R.) at 196a, 210a.) Testimony established that when the precincts close, election officials take the ballot box (the black bag), which is separated from the scanner and taken to the County Voter Services Office pursuant to the Election Code. Election officials retrieve from the scanners the USB drives containing data downloaded from the scanners. Voter Services also secures the bags that contain provisional, military, and absentee ballots once these have also been separately scanned.

There is no dispute by the parties and, in fact, even the Director of Elections testified, that **scanners create a record,** the purpose of which is **to assist**

best indication of legislative intent is the plain language of the statute. When determining the plain meaning of the statute, we consider the statutory language in context and give words and phrases their common and approved usage. Where the language is clear and unambiguous, we must give effect to the words of the statute and not disregard the text to implement its objective. Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent.

*Houghton Enterprises, Inc. v. Department of State*, 297 A.3d 862, 869 (Pa. Cmwlth. 2023) (citations omitted).

PAM - 2

**in tabulating**. Relevant to this, the legislature enacted Section 1101-A of the Election Code, which provides:

> "**Automatic tabulating equipment**" means any apparatus which automatically examines and computes votes **registered on paper ballots**, ballot cards or district totals cards or votes registered electronically and which tabulates such votes.

25 P.S. § 3031.1, added by the Act of July 11, 1980, P.L. 600 (emphasis added).

Clearly, the scanners here fit within the ambit of Section 1101-A as "automatic tabulating equipment." As such, the scanners are not ballot boxes or voting machines and must be viewed as separate and distinct parts of the voting process, the purpose of which is to tabulate vote data. That data is used by Voter Services to tabulate results, **create reports,** and produce other data related to the election, including but not limited to the **CVR**. The CVR is generated from the information contained in Voter Services' central computer. (Honey's Br., at 7-11; R.R. at 130a, 135a.) The CVR is not physically located in the ballot box or the voting machine. The CVR is stored electronically in Voter Services' central computer until printed out in a **format *not* resembling a ballot** and ***not* containing information that identifies any voter.** (Trial Ct. Op., December 16, 2022, at 70.)

As the trial court properly found, the CVR is not a copy of the ballot. It is "a spreadsheet that shows the adjudication of every choice on every ballot cast in the election." *Id.* at 3. As also found by the trial court, permitting examination of the CVR simply allows the public to "check the math of the board of elections, making sure a line-by-line tally of votes for each candidate is consistent with the final number reported by the election board." *Id.* at 65-66. Also as correctly found by the trial court, **there is no information in the CVR that could associate a voted ballot with a certain voter. The order of the numbered list of voters does not**

**even correspond to the order in which ballots are cast. The only way a person could determine an elector's ordinal position is by personally observing that elector cast his or her ballot.** *Id.* at 71.

Based on the above, and as found by the trial court, the scanners utilized in Lycoming County are automatic tabulating equipment, NOT voting machines or part of the ballot box. Simply by virtue of the Election Code definitions, automatic tabulating equipment cannot be construed as a voting machine or ballot box without ignoring the clear intent of the legislature. The data from the scanners is used to create reports, the CVR, which does not contain information that could associate a voted ballot with a certain voter. The reports are used to help ensure the vote count is correct, information which the legislature has clearly deemed should not be denied to the public. The trial court did not err in concluding Section 308 does not exempt Lycoming County's CVRs from public access.

Accordingly, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heather Honey                         :
                                        :
            v.                   : No.  57 C.D. 2023
                                        : Argued:  December 6, 2023
Lycoming County Offices of     :
Voter Services                   :
                                        :
Appeal of:  Al Schmidt, in his Official  :
Capacity as Secretary of the       :
Commonwealth               :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE ELLEN CEISLER, Judge
                   HONORABLE LORI A. DUMAS, Judge
                   HONORABLE STACY WALLACE, Judge


DISSENTING OPINION
BY JUDGE WALLACE                            FILED:  March 4, 2024


Respectfully, I disagree with two critical aspects of the Majority's analysis in this case.  The first is the Majority's determination that the electronic voting system used in Lycoming County is a type of "voting machine."  *See Honey v. Lycoming Cnty. Offs. of Voter Servs.*, ___ A.3d ___ (Pa. Cmwlth., No. 57 C.D. 2023, filed March 4, 2024), slip op. at 11-17 (Maj. Op.).  Under the Pennsylvania Election Code (Election Code),[1] "the term 'voting machines' applies to paperless mechanical lever

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

systems."[2]  *Banfield v. Cortes*, 110 A.3d 155, 170 (Pa. 2015) (citing *In re: Gen. Election for Twp. Supervisor of Morris Twp., Wash. Cnty.*, 620 A.2d 565, 568-69 (Pa. Cmwlth. 1993)).  The Election Code contains provisions dealing separately with "electronic voting systems" and "voting machines."[3]  Additionally, "[u]pon the installation of an electronic voting system in any election district, **the use therein . . . of voting machines shall be discontinued**, except as otherwise provided" in the Election Code.  Section 1104-A(b) of the Election Code, added by Act 128, 25 P.S. § 3031.4(b) (emphasis added).

The Majority points to language found in Section 1703 of the Election Code, 25 P.S. § 3263, which provides that a petition for recanvass may be filed with respect to a voting machine or electronic voting system, for the proposition that electronic voting systems are "a type of voting machine, or that the two terms are effectively synonymous."  Maj. Op. at 12, 16.  This is a misreading of Section 1703.  The Election Code applies the voting machine recanvassing procedures to some, but not all, electronic voting systems.  Section 1118-A of the Election Code, added by Act 128, 25 P.S. § 3031.18, directs the recount procedures for traditional paper ballots apply to "an electronic voting system utilizing paper ballots," while the recanvassing

---

[2] *See also Dayhoff v. Weaver*, 808 A.2d 1002, 1010 n.21 (Pa. Cmwlth. 2002) (explaining a "**'voting machine' . . . is a mechanical device, not an electronic device**. . . . [B]y using a voting machine, the voter will vote by operating the key, handle, pointer or knob, upon or adjacent to which the name of such candidate is placed.") (emphasis added).

[3] Indeed, the Election Code contains separate requirements for "voting machines" and "electronic voting systems," as well as separate election and post-election procedures.  *Compare* Sections 1107, 1216, and 1227 of the Election Code, 25 P.S. §§ 3007, 3056, and 3067, *with* Sections 1107-A, 1112-A, and 1113-A of the Election Code, added by Section 4 of the Act of July 11, 1980, P.L. 600, No. 128 (Act 128), 25 P.S. §§ 3031.7, 3031.12, and 3031.13.  *See also* Section 1404(e) of the Election Code, 25 P.S. § 3154(e) (distinguishing, **in the same subsection**, between recounts and recanvasses of paper ballots, voting machines, electronic voting systems that use paper ballots, and "any other type of electronic voting systems").

procedures for voting machines apply to "any other type of electronic voting system."[4] The electronic voting system at issue here uses paper ballots, so the voting machine recanvassing procedures would not apply. Further, the fact that our General Assembly specified the voting machine recanvassing procedures would apply to some, but not all, electronic voting systems demonstrates it did not consider electronic voting systems to be "synonymous" with voting machines.[5] *See* Maj. Op. at 12, 16.

I must also disagree with the Majority's suggestion that our General Assembly intended Section 308 of the Election Code, 25 P.S. § 2648, to prevent the public

[4] The quoted language applies specifically to recount and recanvassing procedures under Sections 1701-03 of the Election Code, 25 P.S. §§ 3261-63. More broadly, Section 1118-A governs any recount "ordered as provided by law" in an election district using an electronic voting system and directs "the ballots shall be recounted in accordance with [S]ection 1404(e)." 25 P.S. § 3031.18. Section 1404(e)(3)-(4) provides as follows:

> (3) In a county in which an election district uses **an electronic voting system utilizing paper ballots**, all of the following apply:
>
> (i) The county board shall recount all ballots using manual, mechanical or electronic devices of a different type used for the specific election.
>
> (ii) All ballots containing overvotes shall be counted manually.
>
> (4) In a county in which an election district uses **any other type of electronic voting systems**, the county board shall conduct the recanvass similar to the procedure specified in clause (1) for **voting machines**.

25 P.S. § 3154(e)(3)-(4) (emphasis added).

[5] The Majority criticizes part of an alternative analysis in *In re: Recount of Berks County General Election of November 8, 2022*, 296 A.3d 64 (Pa. Cmwlth.) (Wallace, J.) (single-Judge op.), *affirmed*, 297 A.3d 687 (Pa. 2023), which cited the statements from *Banfield* and *Dayhoff*, quoted above. Maj. Op. at 16 n.12. The Majority should not be so quick to condemn these prior decisions, particularly when its own analysis fails to address statutory provisions that directly contradict its reasoning, and when it eschews case law in favor of dictionaries and the United States Electoral Assistance Commission website. *See id.* at 13-16.

from accessing "voting information." *See* Maj. Op. at 18. To the contrary, Section 308 permits the public inspection of election records containing all sorts of "voting information," including "general and duplicate returns, tally papers . . . **reports and other documents and records**." 25 P.S. § 2648 (emphasis added). If the disputed ClearVote Cast Vote Record (CVR) resembles anything specified in Section 308, it would be a "report." Alternatively, it would fall under Section 308's catchall language relating to "other documents and records." Although Section 308 includes an exception for "the contents of ballot boxes and voting machines and records of assisted voters," our General Assembly did not have an electronic spreadsheet in mind when it enacted this exception nearly 90 years ago, and construing the exception to apply under the circumstances would be inconsistent with Section 308's overall goal of encouraging transparency and public trust in election results.

One purpose of Section 308's exception may have been to mitigate fraud. The Election Code is replete with provisions limiting the opportunities individuals would have to tamper with ballot boxes or voting machines and imposing penalties on those who do. *See, e.g.*, Section 530(a) of the Election Code, 25 P.S. § 2730(a) (providing polling places "shall be furnished with a guard rail or barrier . . . so constructed and placed that only such persons as are inside said rail or barrier can approach within six feet of the ballot box . . . or voting machines, as the case may be"); Section 1827 of the Election Code, 25 P.S. § 3527 ("If any person . . . shall deposit fraudulent ballots in the ballot box; or shall register fraudulent votes upon any voting machine; or shall tamper with any . . . ballot box or voting machine . . . , he shall be guilty of a felony of the third degree . . . ."). Here, there is no reason to believe public inspection of the disputed CVR would facilitate fraud. *See* Reproduced Record (R.R.) at 577A-78A.

The exception may also serve to promote secrecy in voting.  *See, e.g.*, Section 1826 of the Election Code, 25 P.S. § 3526 (penalizing any person "who, before any ballot is deposited in the ballot box as provided by this act, shall unfold, open or pry into any such ballot, with the intent to discover the manner in which the same has been marked").  Article VII, section 4 of the Pennsylvania Constitution expressly enshrines the secret ballot.  *See* Pa. Const. art. VII, § 4 ("All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved.").  The disputed CVR lacks identifying information and is randomized, which alleviates concerns that public inspection would reveal an individual voter's selections.  *See* R.R. at 581A-83A; Schmidt's Br. at 8 n.1.

Section 308's exception most clearly relates to the recount and recanvassing procedures discussed above, which limit when ballot boxes may be opened or voting machines examined.  The exception ensures ballot boxes and voting machines will be preserved and protected if a recount or recanvass is necessary.  Even considering the exception in this context, however, it would further no legislative purpose to deny public inspection of the disputed CVR.  Once again, the recount procedures for traditional paper ballots apply to electronic voting systems like the one in this case, which "utilize[] paper ballots."  25 P.S. § 3031.18; 25 P.S. § 3154(e)(3).  In the event of a recount, the ballots themselves would be recounted to determine the outcome of the election, not the CVR.  25 P.S. § 3154(e)(3).

I recognize Appellant Al Schmidt's contention that the public could misinterpret or misuse information contained in the disputed CVR.  The same thing might be said about many other publicly available records, particularly those relating to politically sensitive or controversial topics.  More importantly, that is a policy

argument for our General Assembly, which could just as easily determine that the potential benefits of public inspection, including increased transparency and public trust, outweigh any risks of misinterpretation or misuse. I would conclude that the electronic voting system at issue is not a type of voting machine, and that the CVR is subject to public inspection as a report, other document, or other record, consistent with Section 308's language and purposes. Accordingly, I dissent.

                                               _____

                                               STACY WALLACE, Judge