IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Stroehmann,            :
                Appellant       :
                                :
     v.                   :  No. 555 C.D. 2023
                                :
Lycoming County Office of Voter  :
Services                      :  Argued: April 10, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED: July 12, 2024

Currently before us is Appellant Jeffrey Stroehmann's (Stroehmann) appeal of the Court of Common Pleas of Lycoming County's (Common Pleas) May 8, 2023 order. Through that order, Common Pleas denied Stroehmann's Right-to-Know Law (RTKL)[1] request for digital images of ballots cast in person during the 2020 General Election in Lycoming County. We affirm.

## I. Background

On March 21, 2022, Stroehmann submitted a request to the Lycoming County Office of Voter Services [(Voter Services)] under the RTKL, seeking:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

(1) "All mail-in ballot images from the 2020 general election (pursuant to 25 P.S. § 3150.17[2]. . . .)";

(2) "All other ballot images from the 2020 general election"; and

(3) "[A] [d]igital copy of the ClearVote Cast Vote Record (CVR)[FN2] file for every precinct tabulator and central tabulator used in the 2020 general election."[FN3]

[FN2] ClearVote is the election management system that [Voter Services] uses to conduct elections in Lycoming County. The CVR for each precinct tabulator is a

[2] Section 1307-D of the Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, added by the Act of October 31, 2019, P.L. 552 (Act 77). Section 1307-D reads as follows:

(a) General rule.--All official mail-in ballots, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security.

(b) Record.--For each election, the county board shall maintain a record of the following information, if applicable, for each elector who makes application for a mail-in ballot:

(1) The elector's name and voter registration address.

(2) The date on which the elector's application is received by the county board.

(3) The date on which the elector's application is approved or rejected by the county board.

(4) The date on which the county board mails or delivers the mail-in ballot to the elector.

(5) The date on which the elector's completed mail-in ballot is received by the county board.

(c) Compilation.--The county board shall compile the records listed under subsection (b) and make the records publicly available upon request within 48 hours of the request.

25 P.S. § 3150.17.

spreadsheet showing raw data associated with the ballots cast at that precinct, and the CVR for the central tabulator is a similar spreadsheet showing raw data associated with every ballot cast in Lycoming County.

[FN3] The first and third [parts] of [Stroehmann's request have] since been resolved for the purposes of this action; the only issue before [Common Pleas was] whether [Voter Services] properly denied [Stroehmann's] RTKL request concerning ballot images other than those specified in 25 P.S. § 3150.17[, *i.e.*, mail-in ballots].

On March 30, 2022, [Voter Services] denied Stroehmann's RTKL request on the grounds that "[t]he Election Code provides that the contents of ballot boxes, including mail-in ballots and the CVR, are not accessible under the RTKL." On April 12, 2022, Stroehmann appealed that denial to the Pennsylvania Office of Open Record (OOR), which received briefing and additional information from the parties.

On May 26, 2022, the OOR issued a Final Determination [granting in part and] denying [in part] Stroehmann's appeal. First, the OOR reviewed Stroehmann's request [regarding] mail-in ballots. Citing the plain language of 25 P.S. § 3150.17(a), the OOR granted [this part of] Stroehmann's request and ordered [Voter Services] to produce records responsive [thereto].[FN5]

[FN5] [Voter Services] did not appeal this [OOR] determination and has since produced the requested [mail-in ballot] records.

Next, the OOR reviewed [Section 308 of the Election Code,] 25 P.S. § 2648, the provision . . . governing public inspection of elections documents, which provides that such documents are generally accessible with the exception of "the contents of ballot boxes and voting machines and records of assisted voters. . . ." The OOR noted that it had consistently classified ballot images for non-mail-in ballots as "the contents of a ballot box or voting machine," and thus not subject to access under the RTKL. On these grounds, the OOR denied [the] second [part of Stroehmann's RTKL] request.

3

Finally, regarding the [part of the RTKL] request [pertaining to] the CVR, the OOR reviewed the affidavit of Forrest Lehman (Lehman), Director of Elections for Lycoming County, who asserted the County's position that a CVR is essentially the digital equivalent of the contents of ballot boxes and therefore excluded from access under Section 308. The OOR discussed Stroehmann's argument that the CVR, which takes the form of a digital spreadsheet containing data, is not akin to the contents of ballot boxes, *i.e.*, the actual voted ballots. The OOR concluded that Lehman was credible and knowledgeable in the area of elections, rendering it improper for the OOR to substitute its judgment for his. On this ground, the OOR agreed with [Voter Services'] reading of Section 308 as applicable to CVRs, and denied [the] third [part of Stroehmann's RTKL] request.

Common Pleas Op., 5/8/23, at 1-3 (cleaned up).

Stroehmann then appealed the OOR's decision regarding the second and third parts of his RTKL request to Common Pleas. Thereafter, on February 21, 2023, Common Pleas held a one-day hearing regarding Stroehmann's appeal. *Id.* at 10. During the course of this hearing, the parties agreed by stipulation to admit the transcript and evidentiary record from *Heather Honey v. Lycoming County Office of Voter Services*, a related matter that Common Pleas had handled and in which Stroehmann had intervened, into the hearing record. *Id.*[3] Voter Services then called Lehman, Director of Elections for Lycoming County, as its sole witness. Lehman testified regarding how Lycoming County handled ballots other than those which it had received via mail. *Id.* at 10-13. Stroehmann did not call any witnesses. *Id.* at 13.

---

[3] Not coincidentally, this Court recently handled *Honey* on appeal from Common Pleas. *See Honey v. Lycoming Cnty. Offs. of Voter Servs.*, 312 A.3d 942 (Pa. Cmwlth. 2024).

4

Thereafter, Common Pleas issued an opinion and order,[4] on May 8, 2023, through which it denied Stroehmann's appeal regarding the second part of his RTKL request.[5] In doing so, Common Pleas looked to Section 308 of the Election Code, which in pertinent part exempts the contents of ballot boxes from public disclosure, as well as two provisions contained in Act 77, the landmark 2019 voting law, that explicitly declared that certain materials relating to absentee and mail-in ballots were public records. *Id.* at 18-22. The first of these provisions amended Section 1309 of the Election Code, which had already specified that "[a]ll official absentee ballots, files, applications for such ballots and envelopes on which the executed declarations appear, and all information and lists" are public records, to also designate as public records certain information regarding absentee ballot applications. *See* 25 P.S. § 3146.9.[6] The second added Section 1307-D to the Election Code, in order to designate as public records the same kinds of materials and information in the context of mail-in ballots. *See id.* § 3150.17. While Common Pleas ruled that Section 308 was ambiguous regarding whether images of cast in-person ballots were to be

---

[4] Common Pleas was the ultimate finder of fact in this matter, as ordained by the RTKL, and consequently conducted a *de novo*, plenary review of the OOR's decision. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

[5] Common Pleas did not rule upon the merits of the third part of Stroehmann's request, regarding disclosure of Lycoming County's CVR for the 2020 General Election. *See* Common Pleas Op., 5/8/23, at 34-35. Instead, it did two things. First, it stated without elaboration that the third part of that request "[has] been resolved for the purposes of this action[.]" *Id.* at 2 n.3. Second, Common Pleas noted that it had already ruled in *Honey* that the CVR was a public record that was not shielded by the Election Code from disclosure pursuant to a RTKL request. *See id.* at 8-9. Common Pleas, however, did not expressly order that the CVR be disclosed to Stroehmann as a result of *this* matter. *See id.* at 34-35. We have since reversed Common Pleas' disposition of *Honey*, on the basis that CVRs cannot be obtained through an RTKL request, because they constitute the contents of voting machines and, thus, are not public records. *See Honey*, 312 A.3d at 946-54.

[6] Added by the Act of March 6, 1951, P.L. 3.

5

considered the contents of ballot boxes, it noted that, at present, there was nothing in the Election Code expressly stating that such images were public records; this, coupled with the revisions the General Assembly had elected to make to the Election Code through Act 77, led Common Pleas to the conclusion that "the doctrine of *expressio unius est exclusion* [sic] *alterius* suggests that the legislature's decision to explicitly list absentee ballots and mail-in ballots as public records implies their intention that other types of ballots are not public records under the Election Code." Common Pleas Op., 5/8/23, at 30.[7] Common Pleas also reasoned that it would not make sense to deem images of cast in-person ballots to be public records, because "[i]n most situations, if some law or order of court forbids the disclosure of a document, it would be absurd to argue that a party in possession of that document could publicly disclose (or be compelled to disclose) an exact photocopy, on the grounds that it is not literally the physical piece of paper that the parties signed in ink." *Id.* at 28. Furthermore, Common Pleas held that this interpretation was proper because it gave full effect to both the general exclusionary language contained in Section 308, as well as the specific public records designations made through Sections 1307-D and 1309. *Id.* at 32. Finally, Common Pleas expressed its belief that the General Assembly may have chosen not to designate as public records images of ballots that were cast in person, because its concerns about compromising voter privacy may have outweighed its concerns about the potential for in-person election fraud. *Id.* at 32-34.[8]

---

[7] "Under the doctrine of *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters." *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020) (cleaned up).

[8] Common Pleas did not rule upon whether Stroehmann could obtain images of cast absentee ballots through his RTKL request, presumably because Voter Services' position was also **(Footnote continued on next page…)**

This appeal to our Court followed shortly thereafter.

## II. Discussion

Stroehmann offers three arguments for our consideration, which we summarize as follows.[9] First, Common Pleas erred by denying the third part of Stroehmann's RTKL request, because images of ballots cast in person do not qualify in this instance as the contents of ballot boxes or voting machines under Section 308 of the Election Code. This is because the optical scanners used by Lycoming County to record votes do not constitute voting machines, as well as because only physical ballots themselves can be considered the contents of a ballot box. Stroehmann's Br. at 11-14, 17. Second, by determining that images of ballots that were cast in person are not public records, Common Pleas failed to interpret Sections 308, 1307-D, and 1309 of the Election Code *in pari materia*. Instead, Common Pleas should have read these three provisions together as rendering all ballots images available upon request and only exempting from public disclosure the literal, physical contents of ballot boxes while the actual ballots are situated therein. *Id.* at 14-18. Finally, Common Pleas erred by considering hypotheticals about how disclosure of the requested information would affect voter privacy and ballot secrecy. *Id.* at 18-19.

> Generally speaking, the purpose of the RTKL is "to promote access to official government information in

that Section 1309 of the Election Code classifies absentee ballots as public records. *See* Common Pleas Op., 5/8/23, at 10-15, 26, 34-35; *see also* Stroehmann's Br. at 15 (stating that Voter Services "has already acknowledged that absentee and mail-in ballots are public records"); Voter Services' Br. at 5 (cleaned up) ("After the passage of Act 77, both mail-in ballots and absentee ballots were expressly public records.").

[9] "When[, as here,] the court of common pleas is the 'Chapter 13' or reviewing court, our appellate review is limited to [determining] whether the trial court has committed an error of law and whether the findings of fact are supported by substantial evidence." *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1123 n.3 (Pa. Cmwlth. 2017) (citing *Twp. of Worcester v. Off. of Open Recs.*, 129 A.3d 44, 49 n.2 (Pa. Cmwlth. 2016)).

order to prohibit secrets, scrutinize the actions of public officials[,] and make public officials accountable for their actions." *Off. of Governor v. Raffle*, 65 A.3d 1105, 1107 n.1 (Pa. Cmwlth. 2013). Accordingly, local agencies are statutorily required to "provide public records [to individuals who request them] in accordance with [the RTKL]." Section 302(a) of the RTKL, 65 P.S. § 67.302(a). However, that does not mean that all local agency records are "public" and eligible for dissemination upon request. Per Section 305(a) of the RTKL:

A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:

. . . .

(3) the record is exempt from disclosure under any other [f]ederal or [s]tate law or regulation or judicial order or decree.

65 P.S. § 67.305(a); *accord* Section 102 of the RTKL, 65 P.S. § 67.102 (defining "public record" in relevant part as "[a] record, including a financial record, of a Commonwealth or local agency that . . . (2) is not exempt from being disclosed under any other [f]ederal or [s]tate law or regulation or judicial order or decree"). In other words, the RTKL's presumption that all records possessed by a local or state agency are public in nature, and are thus disclosable to a requester, yields where a statutory exemption exists for a certain kind of record.

*Honey*, 312 A.3d at 948.

Stroehmann, through his first two arguments, posits that Common Pleas incorrectly read the Election Code as exempting from disclosure digital images of ballots that were cast in person. As such, these arguments present pure questions of statutory interpretation, regarding which "our standard of review [here] is *de novo*, and our scope of review is plenary and non-deferential." *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020).

The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). In

8

> pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Com. v. McClintic*, 909 A.2d 1241 (Pa. 2006). Thus, statutory construction begins with examination of the text itself. *Se. Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).
>
> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).
>
> Moreover, although we must "listen attentively to what a statute says, one must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001). We may not insert a word the legislature failed to supply into a statute. *Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa. Cmwlth. 2004).

*Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "However, if we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory analysis, wherein we may consider numerous relevant factors." *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013) (citing 1 Pa. C.S. § 1921(c)). "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014). Regardless of whether a statute is deemed ambiguous or not, our rules of construction forbid a court from adopting an interpretation that will produce "a result that is absurd, impossible of execution[,] or unreasonable." 1 Pa. C.S. § 1922(1). Furthermore,

[w]hen construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. *Com. v. Mayhue*, 639 A.2d 421, 439 (Pa. 1994). Statutory language must be read in context, "together and in conjunction" with the remaining statutory language. *Pa. Gaming Control Bd. v. Off. of Open Recs.*, 103 A.3d 1276, 1284-85 (Pa. 2014) (citing *Bd. of Rev. of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010)).

. . . .

A fundamental principle in statutory construction is that we must read statutory sections harmoniously. *Off. of Open Recs.*, 103 A.3d at 1284-85. Parts of a statute that are *in pari materia*, *i.e.*, statutory sections that relate to the same persons or things or the same class of persons and things, are to be construed together, if possible, as one statute. 1 Pa. C.S. § 1932. "If they can be made to stand together, effect should be given to both as far as possible." *Off. of Open Recs.*, 103 A.3d at 1284 (quoting *Kelly v. City of Phila.*, 115 A.2d 238, 245 (Pa. 1955)). In ascertaining legislative intent, statutory language is to be interpreted in context, with every statutory section read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute" as a whole. *Bd. of Rev. of Taxes*, 4 A.3d at 622. We must presume that in drafting the statute, the General Assembly intended the entire statute, including all of its provisions, to be effective. 1 Pa. C.S. § 1922. Importantly, this presumption requires that statutory sections are not to be construed in such a way that one section operates to nullify, exclude or cancel another, unless the statute expressly says so. *Cozzone ex rel. Cozzone v. Workers' Comp. Appeal Bd. (PA Mun./E. Goshen Twp.)*, 73 A.3d 526 (Pa. 2013); *Off. of Open Recs.*, 103 A.3d at 1284-85.

*Tr. Under Agreement of Taylor*, 164 A.3d 1147, 1155, 1157 (Pa. 2017).

Per Section 308 of the Election Code:

The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts,

10

reports and other documents and records in its custody, **except the contents of ballot boxes and voting machines and records of assisted voters**, shall be open to public inspection, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto: Provided, however, That such public inspection thereof shall only be in the presence of a member or authorized employe of the county board, and shall be subject to proper regulation for safekeeping of the records and documents, and subject to the further provisions of this act: And provided further, That general and duplicate returns, tally papers, affidavits of voters and others, and all other papers required to be returned by the election officers to the county board sealed, shall be open to public inspection only after the county board shall, in the course of the computation and canvassing of the returns, have broken such seals and finished, for the time, their use of said papers in connection with such computation and canvassing.

25 P.S. § 2648 (emphasis added). "Thus, by its plain language and with relevance to this case, Section 308 exempts from public disclosure 'the contents of ballot boxes and voting machines[.]'" *Honey*, 312 A.3d at 950 (quoting 25 P.S. § 2648).

Stroehmann posits that only physical cast ballots, rather than digital copies thereof, constitute the contents of ballot boxes. Unfortunately for him, that argument runs contrary to the outcome dictated by our canons of statutory interpretation. As we explained in *Honey*, "[i]t would produce an absurd result if physical ballots were protected from public disclosure, but digital analogues of those very same ballots were freely available upon request, as what is special about the ballots is not so much the form which they take, but the voting information which they contain." *Id.* at 954. Though Common Pleas incorrectly concluded that Section 308 was ambiguous in this context, it remains that the lower court *correctly* determined that the requested digital ballot images still qualified under that statute as the contents of ballot boxes,

11

as well as that these images were consequently protected from disclosure to the public.

Nor is there any validity to Stroehmann's assertion that such ballots are only shielded from public disclosure while they are held within a ballot box. No provision of the Election Code expressly or implicitly establishes that ballots that were cast in person are no longer considered the contents of a ballot box into which they were deposited simply because they have been removed therefrom. Again, though "we must listen attentively to what a statute says, one must also listen attentively to what it does not say." *Malt Beverages*, 918 A.2d at 175-76 (cleaned up). Section 308 consequently shields ballots that are cast in person (and digital images thereof) against RTKL requests, regardless of whether those ballots are still held in a ballot box or were only kept therein at some point in the past; simply put, there are no temporal limits to this protection.

As for Stroehmann's assertion that Common Pleas misconstrued Sections 308, 1307-D, and 1309 of the Election Code, that argument is also without merit. Again, Section 308 exempts from disclosure ballots that are cast in person, as well as images of those ballots. It is therefore immaterial whether other portions of the Election Code mandate a different outcome regarding other types of cast ballots. Furthermore, even if we were to also assume *arguendo* that cast absentee and mail-in ballots, as well as images thereof, are public records, we would not come to a different conclusion. As Common Pleas cogently explained, this is for two reasons:

> First, if Section 308 is read to allow voted ballots (be they in-person, mail-in, or absentee) to not be the contents of the ballot box and therefore subject to public disclosure, then the language of Sections 1307-D and 1309 allowing public disclosure of mail-in and absentee ballots is superfluous, as Section 308 would have already made these ballots subject to public disclosure. Second, and

12

conversely, if Section 308 is read to mean that voted ballot images are the contents of ballot boxes and not subject to disclosure, then [this] gives meaning to all language in all three statutes[; in accordance with Section 1933 of the Statutory Construction Act, 1 Pa. C.S. § 1933,] the special provisions of Sections 1307-D and 1309 as to mail-in and absentee ballots are an exception to the general language of Section 308 barring disclosure of voted ballot images.

Common Pleas Op., 5/8/23, at 32 (cleaned up).

Finally, Stroehmann's remaining argument is entirely specious. Regardless of whether it was appropriate for Common Pleas to speculate about why the General Assembly had shielded cast in-person ballots from disclosure, it remains that Common Pleas correctly determined that images thereof are not public records under the RTKL. Therefore, to the extent that such speculation may have been unwarranted or improper, it was ultimately harmless in practice.

### III. Conclusion

Accordingly, we discern no error in Common Pleas' conclusion that Stroehmann was not entitled to the digital ballot images he sought through his RTKL request, despite the somewhat flawed logic it used in reaching that result, and consequently affirm Common Pleas' May 8, 2023 order.[10]

ELLEN CEISLER, Judge

---

[10] We note that "[a]n appellate court may affirm the trial court for grounds different than those relied upon by the trial court where other grounds for affirmance exist." *Phila. Fed'n of Tchrs. v. Sch. Dist. of Phila.*, 109 A.3d 298, 321 n.35 (Pa. Cmwlth. 2015).

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Stroehmann,           :
               Appellant      :
                                :
          v.                   :   No. 555 C.D. 2023
                                :
Lycoming County Office of Voter    :
Services                         :

## **O R D E R**

AND NOW, this 12th day of July, 2024, it is hereby ORDERED that the Court of Common Pleas of Lycoming County's May 8, 2023 order is AFFIRMED.

 

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Stroehmann : 
    Appellant : 
        : 
    v. : No. 555 C.D. 2023
        : 
Lycoming County Office of Voter : Argued: April 10, 2024
Services : 

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

CONCURRING AND DISSENTING OPINION
BY JUDGE McCULLOUGH        FILED: July 12, 2024

   I agree with the Majority's conclusion that this Court's holding in *Honey v. Lycoming County Offices of Voter Services*, 312 A.3d 942 (Pa. Cmwlth. 2024) (*en banc*), as binding, precedential authority, requires us to affirm the decision of the Lycoming County Court of Common Pleas. I write separately to briefly emphasize per my dissent in *Honey* my belief that Section 308 of the Election Code[1] does not shield completed ballots and digital copies thereof from Right-to-Know

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2648.

1

Law (RTKL)[2] requests once those ballots have been scanned by an electronic voting system. In my view, all such documents are subject to public disclosure.

The record in this case reflects that Lycoming County uses optical scanners to scan, tabulate and create an image of each cast vote and are part of the County's electronic voting system. (Reproduced Record at 617a.) As I explained in my dissent in *Honey*, by definition, scanners are not ballot boxes or voting machines. They are separate and distinct parts of the voting process, the purpose of which is to tabulate vote data. The Majority states that "Section 308 exempts from disclosure ballots that are cast in person, as well as images of those ballots." (Majority Op. at 12). Because the Majority holds that digital images of completed ballots are protected from public disclosure under Section 308, I cannot agree with that portion of its analysis. Therefore, I am only able to respectfully concur in the result.

_____
PATRICIA A. McCULLOUGH, Judge

_____

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

PAM - 2